WESLEY A. SMITH, DEFENDANT IN ERROR, v. EUGENE M. COLLOTY, PLAINTIFF IN ERROR.

Argued March 13, 1903—Decided July 20, 1903.

1. In an action brought under the Mechanics' Lien law (*Pamph. L.* 1898, *p.* 547, §§ 23, 24), where "legal service" of the summons has been made upon a non-resident builder, and such builder then appears generally in the action or makes defence upon the merits, he thereby submits himself to the jurisdiction of the court, and if the verdict goes against him, the resulting judgment is to be a "general" judgment, binding upon such builder *in personam.*

2. The language of section 24 of the Mechanics' Lien law (*Pamph. L.* 1898, *p.* 549), to the effect that, "when only legal service of the summons has been made," the judgment against the builder shall be "specially for the debt and costs to be made of the building and lands in the declaration described," prevents a judgment *in personam* (called in the section a "general judgment"), against the builder, only in case of judgment by default, where the jurisdiction of the court over his person depends alone upon the service of process; and not in cases where such builder has appeared generally to the action or has made defence upon the merits.

3. Where a contract is made for lathing and plastering to be done at a specified rate per square yard, it is error to permit the jury to ignore the measured area of the walls and ceilings lathed and plastered, and to estimate the area according to the number of laths used in the work, where the evidence shows that the number of laths bears no definite relation to the area.

On error to the Atlantic Circuit Court.

For the plaintiff in error, *George A. Bourgeois.*

For the defendant in error, *Thompson & Cole.*

The opinion of the court was delivered by

PITNEY, J. This is an action upon a mechanics' lien claim. The defendants are Eugene M. Colloty, as builder, and Mary Colloty, as owner. The declaration sets up an indebtedness due from the builder to the plaintiff, and concludes with an averment that the debt is a lien upon the building and lands in question by virtue of the Mechanics' Lien act of 1874. That act was repealed in 1898 (*Pamph. L., p.* 553), long prior to the transactions that gave rise to this suit. But as the statutory provisions on which the lien was rested were re-enacted in the revised Mechanics' Lien law of 1898 (*Pamph. L., p.* 538), the error in the averment of the lien as contained in the declaration was harmless. If this averment were material in the present state of the record, an amendment would be allowed. But as the record discloses a judgment against the builder only, the averment respecting the lien is now immaterial.

The declaration recites the manner in which the builder

and owner were served with the summons, and discloses that what is called in the statute "legal service" was made upon both defendants—that is, copies of the summons were affixed upon the building in question and were mailed to the respective defendants at their post-office addresses in the city of Philadelphia, in the State of Pennsylvania. Both defendants appeared generally in the action and pleaded to the merits. The builder (now plaintiff in error) pleaded the general issue only. The owner pleaded the general issue and the statutory plea that her building and lands were not liable to the alleged debt. At the trial a nonsuit was granted, with respect to the action against the owner, on the ground that the provisions requisite to constitute the debt a lien upon her building and land had not been complied with. This ruling is not now under review. The trial proceeded with respect to the plaintiff's claim against the builder, and at the close of the evidence a motion was made for the direction of a verdict in favor of the builder, on the ground that since the summons was served upon him "legally," the only judgment authorized by the act was a special judgment for the making of the debt and costs out of the building and lands in the declaration described; and that since the building and lands were shown not to be liable for the debt, no judgment could be entered against the builder. The motion was overruled and an exception thereupon sealed, and this ruling is assigned for error. The jury having rendered a verdict in favor of the plaintiff, as against the builder, a general judgment was entered against him for the recovery of the amount found by the verdict to be due. It is assigned for error that since the summons was served "legally," no judgment other than a special judgment could be entered against the builder.

These two assignments alike raise the question whether, in case the builder is a non-resident and is served with summons in the manner that the statute describes as "legal service," and then appears generally in the action and makes defence upon the merits and is defeated, the plaintiff is confined to a judgment special in form, limited to the making of the

debt and costs out of the building and lands of the owner, described in the declaration. It is entirely obvious that, for practical purposes, if a recovery against the builder is to be made, not out of his property, but out of the property of the owner, while, at the same time, the owner's land has been shown not to be subject to the debt, the judgment record will be, not only absurd, but entirely nugatory.

Section 23 of the Mechanics' Lien law prescribes the form of the summons and the mode of its service. Section 24 prescribes the proceedings in the cause from the filing of the declaration until the entry of judgment. An examination of these sections will show that the distinction therein made between "actual service" and "legal service" is carried into effect only with respect to the form of the judgment against the builder, for the form of the judgment against the owner is to be special in any event. As to the builder, the action is *in personam.* As to the owner, it is *quasi in rem.* A "general" judgment is a judgment *in personam;* a "special" judgment operates *in rem.*

Section 23, after providing that when a claim is filed agreeably to the provisions of the act, upon any lien created thereby, it may be enforced by suit in the Circuit Court of the county where the building is situate, and, after prescribing the form of summons, proceeds as follows:

"And the said summons shall be directed, tested and made returnable, and may be served and returned in the same manner as other writs of summons; and such summons may be served upon the defendants, or either of them, in any county of this state, by the sheriff thereof, and for this purpose the same, or a duplicate thereof, may be issued to such sheriff; and if any defendant cannot be found in this state, it may be served upon him by affixing a copy thereof upon such building, and also by serving a copy on such defendant personally, or by leaving it at his residence ten days before its return, which shall be deemed actual service, or in case such defendant resides out of this state, by affixing a copy on such building and sending a copy by mail, directed to him at the post-office nearest his residence, or in case his residence is

not known to the plaintiff, then by affixing a copy to such building, and by inserting it for four weeks, once in each week, in some newspaper of this state, published or circulating in the county where such building is situate, either of which shall be legal service; and when an affidavit shall be made and filed of the facts authorizing and constituting any such service, not made by a sheriff or officer, the suit may proceed against the party so served as if such summons had been returned served by the sheriff."

Section 24 should be quoted in full, except the final clause, which is not pertinent. It enacts that:

"The declaration in such case shall, after reciting that the owner and builder and other defendants were summoned, and how served, and why such other defendants were made defendants, be against the builder, and in the same form as in other actions upon contract, and shall conclude with an averment that said debt is, by virtue of the provisions of this act, a lien upon such building and lot, describing the same as in said claim; and to said declaration a schedule may be annexed, and the practice, proceedings and pleadings thereon shall be conducted, and the judgment entered, as in suits in said circuit court to recover money due on contract; and all or any of said defendants may, jointly or severally, have any defence or plea to the same that might be had by the builder to any action on said contract without this act; and in addition thereto the owner or mortgagee may plead that said building or land are not liable to said debt, and in such case it shall be necessary for the plaintiff, to entitle him to judgment against the building and lands, to prove that the provisions of this act, requisite to constitute such lien, have been complied with; and any defendant mortgagee may have a further plea that said lien claim is subject to such mortgagee's lien, and the judgment in any such case shall determine the priority of the liens of the plaintiff and each of said defendants; and any judgment or proceeding under the same shall not affect the lien of any of said defendants whose lien shall be determined to be paramount to that of the plaintiff; and in case a verdict be rendered or judgment be given against the

builder only, judgment shall be given for the landowner, with costs against the plaintiff; and in case judgment be given for the plaintiff, it shall be entered against the builder when he was actually served with the summons, generally, and with costs as in other cases; and when only legal service of the summons has been made, judgment against the owner and also against the builder shall be specially for the debt and costs, to be made of the building and lands in the declaration described; and in case no general judgment is given against the builder, such proceedings or recovery shall be no bar to any suit for the debt, except for the part thereof actually made under such recovery."

If we were called upon in this case to decide concerning the precise meaning of the term "actual service," in section 23, and to determine the reason for the discrimination that is made in section 24, with respect to the form and effect of the judgment as between a builder "actually" served and a builder "legally" served with the summons, it would be important to recall that the provisions above quoted (so far as they relate to the mode of service and the form of judgment) originated in the year 1853, when our first General Mechanics' Lien law was enacted, and have been continued without change in the successive revisions since made. *Pamph. L.* 1853, *p.* 440, §§ 8, 9; Revision of 1874 (*Gen. Stat., p.* 2066, §§ 18, 19); Revision of 1898 (*Pamph. L.* 1898, *p.* 547, §§ 23, 24). Repeated decisions have established that in such cases the statute speaks as of the time of its original enactment. *In re Thomas Murphy,* 3 *Zab.* 180; *Clement* v. *Kaighn,* 2 *McCart.* 47, 56; *Freehold Mutual Loan Association* v. *Brown,* 2 *Stew. Eq.* 121; *State* v. *Anderson,* 11 *Vroom* 224, 226; *Union National Bank* v. *Poulson, Id.* 284; *Marts* v. *Cumberland Insurance Co.,* 15 *Id.* 478, 480; *State* v. *Raymond,* 24 *Id.* 260, 263; *Pomeroy* v. *Mills,* 10 *Stew. Eq.* 578; *Smith* v. *Regan,* 25 *Vroom* 167, 171; *Carter* v. *Mayor of Rahway,* 28 *Id.* 196, 199. The last three cases are decisions of this court. As Chief Justice Beasley said (speaking for the Supreme Court) in *Knight* v. *Freeholders of Ocean,* 20 *Vroom* 485 (at *p.* 487): "The incorporation of the existing laws into the body

of the revised laws in an unmodified form does not give to such re-enacted laws the force of original laws passed at the date of the revised laws. Such laws were re-enacted with no purpose of giving to them any new efficacy, but simply to the end of bestowing upon their re-arrangement a legislative sanction. The laws so adjusted are not to be deemed to have acquired any different efficacy from that possessed by them in their original condition."

So viewing the provisions of the Mechanics Lien law referred to, we are reminded of the general state of the law as it stood at the time of their original enactment, with respect to subjecting non-resident parties to a judgment *in personam,* upon notice of the suit served upon them in a foreign jurisdiction. At that time it was commonly held that a personal judgment, effective within the territory of the state, could be rendered by a state court against a non-resident defendant who did not appear and submit himself to the jurisdiction of the court, provided notice of the suit had been served upon him in the state where he resided, or had been published in the state within which the court was situate, pursuant to the provisions of a local statute. At the same time, such judgment was denied any extra-territorial effect. Afterwards, by the fourteenth amendment of the constitution of the United States, it was provided that no state should deprive any person of life, liberty or property without due process of law; the effect of which, as declared by the Supreme Court of the United States in *Pennoyer* v. *Neff,* 95 *U. S.* 714, 733, is to render a personal judgment devoid of any validity either within or without the territory of the state in which it is given, if it be rendered by a state court in an action upon a money demand against a non-resident who is served by a publication of summons, but upon whom no personal service of process within the state is made, and who does not appear to the action. The same rule applies where the summons is served personally upon the defendant, but beyond the limits of the court's jurisdiction. *Freeman* v. *Alderson,* 119 *U. S.* 185; *Sugg* v. *Thornton,* 132 *Id.* 524; *Wilson* v. *Seligman,* 144 *Id.* 41.

As was said by Chief Justice Beasley (speaking of an action *in personam*) in *Elsasser* v. *Haines,* 23 *Vroom* (at *p.* 15): "Formerly a judgment entered in the way provided by the statute of a state was sometimes held to be enforceable in such state, even though the court officiating were not possessed at the time of jurisdiction over the defendant according to the general principles of law and justice, as where such defendant was a non-resident and no process had been served upon him, and no notice had been given, except by way of public advertisement; at the same time it being conceded that such judgment would not be recognized extra-territorially; but now, by force of the addition to the federal constitution just adverted to (the fourteenth amendment) such judgment could be of no legal avail either at home or abroad." Citing Pennoyer *v.* Neff.   See, also, *Hess* v. *Cole* (1851), 3 *Zab.* 116, 123; *Mackay* ads. *Gordon* (1870), 5 *Vroom* 286, 291; *Mutual Life Insurance Co.* v. *Pinner,* 16 *Stew. Eq.* 52; *Kirkpatrick* v. *Post,* 8 *Dick. Ch. Rep.* 591, 597.

Viewing the sections above quoted from our Mechanics' Lien law as having been enacted in 1853, in view of the general rule of law then prevailing, section 23 may be construed as prescribing three different modes of service of the summons, viz., (*a*) ordinary service, to be made by the sheriff of any county in case the defendant can be found in the state to be served therewith in the manner that other writs of summons are served, and (with respect to such defendants as cannot be found in this state) as prescribing two other modes of service, viz., actual and legal, it being required in each of these modes that a copy of the summons be affixed upon the building; the remaining steps to be taken, in order to insure the receipt of the summons by the defendant, being dependent upon the question whether he has a known place of residence abroad or can be found personally within or without the state, and (in the case of such defendants as have a known residence abroad) upon the question whether the plaintiff is willing to go to the expense of reaching him by a service personally or at his residence—that is to say (*b*), "actual service"—to be by serving a copy on such non-resident defend-

ant personally or by leaving it at his residence ten days before its return; (*c*) "legal service," to be made (in case such defendant "resides out of this state"—that is, at some known residence), by sending a copy by mail directed to him at the post-office nearest his residence, or (in case his residence is not known), then by publishing the summons in some newspaper of this state. This reading, of course, treats the Practice act and the Attachment act as *in pari materia* (*Rev. Stat.* 1847, *p.* 931, § 17; *Id., p.* 48, § 1), and treats the term "residence" as equivalent to the "dwelling-house or usual place of abode" at which a summons could be served by the sheriff. In default of such a place of abode in this state, the sheriff (notwithstanding the casual presence here of the defendant in person) might return the writ "not found," and the defendant would be one who "cannot be found in this state," within the meaning of the act. *Perrine* ads. *Evans,* 6 *Vroom* 221; *Stout* v. *Leonard,* 8 *Id.* 492; *Baldwin* v. *Flagg,* 14 *Id.* 495; *Mygatt* v. *Coe,* 34 *Id.* 510; *Camden Safe Deposit Co.* v. *Barbour,* 37 *Id.* 103.

According to this construction the explanation of the distinction between "actual" and "legal" service is that these kinds of service were intended only for defendants who have no known place of abode in this state at which the summons could be served by the sheriff, and that the legislature made the discrimination in the form and effect of the resulting judgment in view of the probability or improbability, according to the circumstances, that the non-resident defendant would receive actual notice of the suit—that is, although the builder were a non-resident, yet, if he were served personally within or without the jurisdiction, or if a copy of the summons were left at his residence so that he would be practically certain of receiving it, it might be deemed consonant with justice to give a personal judgment against him (efficacious within this state), although he did not appear. While, if the plaintiff were not willing to go to the pains and expense of serving the builder personally, or by leaving the summons at his residence in a foreign jurisdiction, but should content himself with mailing the summons, or if the defendant's resi-

dence were not known, so that the only effort that could be made to reach him with notice of the suit was by affixing it to the building and publishing it in a newspaper in this state, in either case it would be so probable that the defendant might not actually receive the notice that the legislature deemed it unjust to render a personal judgment against him in his absence. It is obvious, of course, that, so far as the act provided for a judgment *in personam* against a non-resident builder who was "actually" served with process out of the state, and who did not appear and submit himself to the court's jurisdiction, the act was repealed by the fourteenth amendment, as construed in Pennoyer *v.* Neff, and that a non-appearing non-resident builder, served without the jurisdiction, can now be no more bound by "actual" service than by "legal" service.

Another view of section 23 is that which treats the term "actual service" as including the ordinary service made by a sheriff, and treats "legal service" alone as applicable to non-residents.

We mention these different views, but without amplifying the arguments that support them, respectively, in order that it may be clear that we have not omitted to make a close scrutiny of the statutory scheme, and a careful examination of the act from the historical standpoint. But, for the purposes of the present case, we do not feel called upon to decide what is the precise meaning of the term "actual service" in sections 23 and 24 of the act, nor to come to a definitive conclusion as to the reasons that actuated the legislature in drawing the distinction between "actual" and "legal" service, and discriminating with respect to the form of the judgment to be entered against the builder in the one case and in the other.

For, in any point of view, it is quite manifest that the reason for the distinction between the different modes of service disappears the moment that the defendant enters a general appearance in the action or puts in a defence upon the merits. The power of the court over him then depends, not upon the mode in which notice was sent to him, but upon

the fact that he received it and chose to respond to it, and availed himself of his rights under the act by voluntarily appearing and contesting the plaintiff's claim.

As between two defendants, each pursued in an action founded on a personal liability, where one is served with process in a manner that entitles the court to render a personal judgment against him in his absence, and the other is notified of the suit in a manner that does not entitle the court to render a personal judgment against him in his absence, there is reason in saying that, in the absence of appearance, the former defendant shall be subjected to a personal judgment and the latter defendant not. But where both defendants have appeared, and have equally enjoyed the opportunity of litigating the claims made against them, each with the prospect of a conclusive determination in his favor in the event of success, there is neither sense nor reason in saying that, in the event that they both defend unsuccessfully, the one shall be subjected to a judgment binding *in personam* and the other shall not.

The rule that defects in the form of process and the manner of its service are waived by making appearance and defence upon the merits, is not a technical rule or a rule of mere practice or convenience. It is a rule of jurisprudence, grounded upon the fundamental idea that courts of justice exist for the purpose of hearing and conclusively determining disputes between litigants, from which it results that he who voluntarily comes (whether as plaintiff or defendant) before a court of competent jurisdiction over the subject-matter, and there submits to a trial and determination of the merits of his controversy, is bound by the determination that he has thus invoked. This rule has been uniformly enforced in this state, not only in ordinary actions at law (*McCracken* v. *Richardson,* 17 *Vroom* 50) and in equity (*Crowell* v. *Botsford,* 1 *C. E. Gr.* 458; *Newark Savings Institution* v. *Jones,* 8 *Stew. Eq.* 406), but in the small cause court (*Dare* v. *Ogden, Coxe* 91; *Budd* v. *Marvin,* 1 *South.* 248; *Murat* v. *Hutchinson,* 1 *Harr.* 46, and cases there cited; *Drake* v. *Berry,* 13 *Vroom* 60); in statutory proceedings (*Clifford* v. *Over-*

*seers of Frankford,* 8 *Id.* 152), and even in penal actions
(*Dallas* v. *Hendry, Penn.* *972; *Hageman* v. *Van Doren,* 6
*N. J. L. J.* 310). The same principle has been applied in this
court with respect to an imperfection appearing in a writ of
error; after joinder in error it was held too late to object.
*Hinchman* v. *Rutan,* 2 *Vroom* 496, 502. It must be taken
for granted that the legislature framed the Mechanics' Lien
law in view of this well-known rule and of the principle that
underlies it, and that there was no intent to abrogate either,
unless such intent is clearly expressed in the language of
the act.

It is insisted that such an intent is manifested in the lan-
guage of section 24. Some significance is attributed to that
part of the section that requires the declaration to contain a
recital that the defendants were summoned and how they
were served. But this is substantially the old familiar re-
quirement of the common law that the statement of the cause
of action in the declaration shall be preceded by a recital of
the mode in which the defendant became subject to the juris-
diction of the court. That recital forms a part of the record
(the writ itself does not), and where the validity of the
record depends upon the mode in which the defendant is
notified of the suit, the recital is important, since it then
constitutes the only record evidence that subjects the defend-
ant to the force and effect of the judgment. But if the de-
fendant appears, his appearance is entered upon the record,
and the validity of the proceeding no longer depends alone
upon the mode of his notification; it then depends upon the
fact of his appearance. This is a general rule, universally
applied at common law, and we are unable to see any evidence
that the legislature, in this statute, intended to abrogate it.
Misnomer of the defendant, misnomer of the plaintiff, mis-
statement of the character in which a party sues or is sued,
misstatement of the mode in which a party is served with
process, the statement of a mode of service insufficient to
bind the party, misstatement of the form of action—these
and all similar matters, although they appear upon the face
of the record, and show non-conformity of the declaration

with the recital of process and service, or show that the defendant was not required to answer the declaration, yet they must be availed of, even at common law, by motion to set aside the writ or its service, or by plea in abatement of the writ. None of them could be availed of by demurrer to the declaration or by plea to the merits. All were, and are, waived by a general appearance. 1 *Chit. Pl.* (*13th Am., from 6th London, ed.*) 244, 255, 281, 283.

Section 24 declares that "the practice, proceedings and pleadings thereon shall be conducted and the judgment entered as in suits in such circuit court to recover money due on contract; and all or any of said defendants may jointly or severally have any defence or plea to the same that might be had by the builder to any action on said contract without this act." It is impossible to give any force or effect to this clear and emphatic language unless it means that a defendant who makes a successful defence shall have the full benefit of his success by the rendition of a judgment conclusive against the plaintiff, and, on the other hand, that if the defence be unsuccessful, in whole or in part, the plaintiff shall have the benefit of that for which he prevails, by the conclusive judgment of a court of record. The statute, in declaring that judgment shall be entered as in suits in the same court to recover moneys due upon contract, means that the judgment shall constitute a conclusive determination of the merits of the case, if they were submitted to the adjudication of the tribunal.

Stress is laid by counsel for the plaintiff in error upon the circumstance that section 24, after providing generally for the practice, proceedings, pleadings and judgment, goes on to say that "in case a verdict be rendered or judgment be given against the builder only, judgment shall be given for the landowner, with costs against the plaintiff; and in case judgment be given for the plaintiff, it shall be entered against the builder when he was actually served with the summons, generally, and with costs, as in other cases; and when only legal service of the summons has been made, judgment against the owner and also against the builder shall be specially for

the debt and costs to be made of the building and lands in the declaration described."

But as already remarked, it is in our opinion quite irrational to attribute to the legislature the purpose to establish, in the form and effect of the judgment, where that judgment follows after a trial upon the merits, a discrimination that is dependent solely upon the mode in which the defendant received notice of the suit. The discrimination, as we have already observed, applies solely to the builder—the very person who, according to the averments of the declaration, sustained by the verdict of the jury upon a trial had in presence of both parties, is the person who contracted the debt for which the plaintiff sues. A special judgment against the builder, so far as his personal liability is concerned, is no judgment at all. It would require strong language to justify us in attributing to the legislature so unjust a purpose. In our view, the argument that after a general appearance and defence the judgment against the builder shall be special, not only overlooks entirely the general spirit and purpose of the act and the language of that part of section 24 which renders the proceedings conformable to those in an ordinary action upon contract, but also overlooks the force and effect of the word "only" in the clause declaring that "when *only* legal service of the summons has been made" judgment against the builder shall be special, &c. This word "only" cannot have been intended to make the phrase mean "when only legal and not actual service has been made." It is not within the fair contemplation of the act to suppose that a single defendant would be served twice—once actually and once legally. The phrase must mean, therefore, that the special judgment against the builder—that is, the denial of a judgment *in personam*—shall apply only when the force of the judgment depends upon the method of service— that is, when there has been no appearance, defence or other submission to the court's jurisdiction.

It can hardly be seriously claimed that a builder served "legally" with the summons, who then appears and makes his defence upon the merits, is not, in the event of his success, to have the benefit of a judgment conclusively establish-

ing as against the plaintiff the non-existence of the debt sued for. If we deny to him this benefit, we take away at once the principal, if not the sole, motive for appearance. How, then, can it be argued that in case the same defendant be unsuccessful in his defence the plaintiff shall have no judgment conclusive upon the defendant personally? Common justice requires that estoppels shall be mutual. And the legislative intent to prevent any unilateral estoppel is clearly evinced by the language of section 24, which declares that "in case no general judgment is given against the builder"—that is, if the builder is not estopped by the record—"such proceedings or recovery shall be no bar to any suit for the debt, except for the part thereof actually made under such recovery"— that is, the plaintiff is not to be estopped by a special judgment against the builder.

One or two simple illustrations will, we think, demonstrate the unjust and even absurd consequences that would flow from adopting the construction of this act, with respect to the entry of judgment, that is contended for by the plaintiff in error. Suppose a non-resident builder to be sued in a mechanic's lien suit, and to be served "legally" with the summons. He is, of course, under no obligation to appear and make defence. He believes that he has a defence upon the merits to the whole or a part of the plaintiff's claim. He comes into court and defends because he is satisfied with the tribunal and hopes to prevail in the action. If he succeeds in overthrowing the plaintiff's claim *in toto,* and obtains a verdict in his favor, he has a judgment that is conclusive against the plaintiff in all jurisdictions. On the other hand, if the plaintiff succeeds wholly, he has no judgment binding the builder personally, but only a declaration that the debt thus established is a lien upon the lands of a third party; or if the lien fail, then the plaintiff has no judgment effective for any purpose. This result is highly unjust to the plaintiff. Or, suppose the same builder makes defence for the purpose of disputing a part only of the plaintiff's claim. He succeeds to the utmost of his contention and reduces the demand, let us say, from $10,000 to $5,000, and, for the latter amount,

a verdict goes against the defendant, who has thus accomplished the very purpose of his making appearance.  Yet in this event neither the plaintiff nor the defendant is to be given the benefit of an adjudication conclusive upon the controversy.  For, according to the construction contended for, the judgment against the builder is to be special, because of the circumstance that he received his summons by mail instead of by personal delivery.  And by the very terms of section 24, there being no general judgment against the builder, "such proceedings or recovery shall be no bar to any suit for the debt, except for the part thereof actually made under such recovery."  Thus the plaintiff is at liberty to make the part recovered out of the lands of the owner, and then to pursue the defendant builder in this or any other jurisdiction, and litigate anew the excessive claim that he has once unsuccessfully made.  Of course it is not to be expected that either the plaintiff or the defendant would proceed with an action that, after a fair trial of the merits, was to result in such a "lame and impotent conclusion."  And so the consequence of adopting the construction contended for by plaintiff in error would be a *pro tanto* nullification of the statute.

Upon the whole matter, therefore, we are of the opinion that so much of section 24 as prescribes a special judgment against the builder when only legal service of the summons has been made upon him, must be construed as referring alone to cases of judgment entered by default, where the force and. effect of the judgment depends upon the service of process, and not at all to cases where the defendant has entered a general appearance to the action or has made defence upon the merits.

Nor is there, so far as we have observed, any reported decision in this state to the contrary.  Such cases as we have noticed tend to support the construction above declared.  In *James* v. *Van Horn,* 10 *Vroom* 353, the builder did not appear, and the sole controversy was between the plaintiff and the owner.  In answering the owner's insistment that the trial judge had erred in not requiring proof of the manner of service of the summons, Mr. Justice Reed, speaking for

the Supreme Court, treated this question as immaterial, so far as the owner was concerned, because, as to him, the judgment was to be special in any event—that is, it simply established that the debt, if proved, constituted a lien upon his lands.   In stating that the question whether the service of the summons was effected in one or the other of the modes· mentioned in the statute was important only in determining the form of the judgment against the builder, the learned justice, of course, referred to such a case as the one then presented, where the builder had not appeared or pleaded. And in discussing the fifth assignment of error, which alleged the declaration to be insufficient because it contained no recital of the mode of service of builder and owner, Mr. Justice Reed said: "If this was a material averment, as to the owner, I think the objection should have been raised by demurrer. After plea interposed it was too late to raise the question on the trial, and the verdict would cure the defect on error." And in the same case it was held that a summons in a lien claim suit may be sealed by the attorney, such being the practice in ordinary actions at law.

In *Cornell·v. Matthews, 3 Dutcher* 522, the summons was in violation of section 8 of the act of 1853 (section 23 of the act of 1898), because it described the defendant as builder only, whereas the declaration, after proceeding against him as builder, according to the act, concluded with an averment that the debt was a lien on defendant's interest in the land. Defendant pleaded *non assumpsit,* payment and the statutory plea of land not liable.   The Supreme Court held, on error, that the defendant, by appearing to the suit generally and pleading the plea appropriate to the owner of the land, waived the informality of the summons.

In *Ennis* v. *Eden Mills Paper Co., 36 Vroom* 577, the defendant was a corporation sued as builder and owner, and it appeared upon the face of the record that the summons was served by delivery to the secretary, without its appearing that the president could not be found and had no dwelling-house in this state at which process might be served.   After judgment by default, application was made to the Circuit

Court to open the judgment, but upon other grounds. That court denied the application, whereupon a writ of error was sued out, and this court sustained the judgment of the Circuit Court, holding that its decision was correct upon the question that was presented there, and that the other question ( the defective service of the summons) was waived because not presented below in the application to open the judgment. The same disposition, and for the same reason, was made of defendant's objection that the declaration was defective in not showing the manner in which the process was served. Upon the question that was contested in the Circuit Court there was some difference of opinion in this court, but upon the question of waiver of the objection to the service of the summons and of the objection to the declaration there was no dissent. In short, this court, in that case, treated the defendant as .it would have treated any defendant in any action upon contract; requiring no more certainty in the recital concerning service of summons than would have been required in any case, and holding that the defendant had waived the objection to the mode of service by making application to open the judgment upon grounds that were not jurisdictional.

In the case now under review those assignments of error that attack the entry of a general judgment against the plaintiff in error must be overruled, for the reasons above given.

But we find in the record certain trial errors that are evidenced by bills of exceptions and pointed out by assignments of error. These all relate to the instructions of the trial judge to the jury with respect to the measure of damages, and they turn upon a single question. Plaintiff's action was brought to recover the amount due for lathing and plastering the building in question, under a contract made between him and the defendant builder, which provided compensation for the plaintiff at the rate of twenty-five cents per square yard. The making of the contract on those terms, and its performance by the plaintiff, were not disputed. As to the quantity of work that had been done, the plaintiff's evidence tended to

show that there was a local custom under which the area of walls and ceilings lathed and plastered was estimated according to the number of lath that were used—one thousand lath being treated as equivalent to sixty square yards. Whether, in fact, one thousand lath would cover sixty square yards, or more or less, depended, according to the evidence, upon the width of the lath, the spaces left between them as laid, and upon other contingencies. The defendant introduced evidence tending to show the actual number of square yards that were lathed and plastered. Upon this showing the amount due for the work was materially less than would result from adopting the plaintiff's method of estimation. The trial judge left it to the jury to determine which method of measurement was more accurate, and permitted them to base their verdict upon either method that they might adopt. In this we think there was manifest error. The agreement was to pay for the lathing and plastering at a specified rate per square yard. This, by its terms, meant the measured area of the walls and ceilings lathed and plastered. There was no ambiguity in the contract that would admit of the use of a local custom to explain or vary its terms.

Because of these trial errors the judgment of the Circuit Court should be reversed, and a *venire de novo* awarded.

In the determination of the cause the following questions were submitted to the vote of the court:

*First.* On such proceedings as were had in the Circuit Court, could that court legally render a general judgment against the builder?

*Yes*—THE CHIEF JUSTICE, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM. 8.

*No*—THE CHANCELLOR, VAN SYCKEL, DIXON, GARRISON, FORT. 5.

*Second.* Was error committed in the trial with regard to the measure of damages?

*Yes*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM.    13.

*No*—None.

*Third.* Shall the judgment be reversed?

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM.    13.