## THE MAYOR AND COMMON COUNCIL OF THE BOROUGH OF NORTH PLAINFIELD v. JOHN A. GOODWIN.

Argued June 7, 1904—Decided February 27, 1905.

1. In summary proceedings before the recorder of a borough, under the General Borough act (*Pamph. L.* 1897, *p.* 282, §§ 10–13), the objections that defendant was arrested without warrant, and that no complaint had been made against him prior to his arrest, are abandoned by defendant's express consent to waive all benefit of these informalities and to go to trial upon the merits of a complaint filed after his arrest.

2. In the review by *certiorari* of a summary conviction had before a magistrate, where the original return to the writ fails to show of what offence the prosecutor was found guilty and the evidence upon which the conviction was based, it is proper practice for this court, upon a suggestion of diminution of the record, to make a rule for a further return, thereby calling upon the court below to make certificate to this court with respect to the matters in which the original return is defective.

---

On *certiorari* to the Recorder's Court of North Plainfield.

Before Justices FORT and PITNEY.

For the prosecutor, *Codington & Swackhamer.*

For the respondent, *Charles A. Reed.*

The opinion of the court was delivered by

PITNEY, J. The prosecutor, Goodwin, was found guilty by the recorder of the borough of North Plainfield of a violation of one of the ordinances of the borough and sentenced to pay a fine of $10, and in default of payment to be confined in the borough lock-up for the period authorized by the ordinance, to wit, seven days. This *certiorari* brings that conviction under review.

By the General Borough act of 1897 (*Pamph. L., p.* 282, §§ 10–13), the mayor is authorized to act as a magistrate in certain matters arising in the borough, and, amongst other things, to hear, try and determine suits and actions brought for the recovery of any penalty prescribed for the violation of any ordinance, and also to hear, try and determine offences charged before him by sworn complaint in writing to have been committed in violation of ordinances for which the punishment is by fine or imprisonment. When a sworn complaint is made he is authorized to issue process in the nature of a summons or warrant, in his discretion, and on the return of the process he is to proceed and hear the testimony, and to determine and give judgment in the matter, without the filing of any pleadings, and if he finds the defendant guilty he is to give judgment for the penalty mentioned in the ordinance, and at the same time sentence the defendant, in default of the payment of the judgment and costs, to the borough lock-up or county jail for such period as may be authorized by the ordinance. Except as otherwise directed by the act, all proceedings before the mayor are to be regulated, as nearly as may be, by the acts of the legislature regulating the like proceedings before the justices of the peace; and all suits, actions and proceedings for the recovery of any penalty for the violation of a borough ordinance are, as nearly as may be, to be regulated by the act constituting courts for the trial of small causes. By section 13 the borough council is authorized to appoint a borough recorder, who shall have the same jurisdiction in cases of violations of borough ordinances as is vested in the mayor, with the same authority to issue process, try and determine such causes, and fine or imprison

upon conviction. The recorder before whom the present conviction was had was, presumably, appointed pursuant to section 13. No objection is made as to his official authority.

The first and second reasons assigned for reversing the conviction are that the prosecutor (defendant below) was arrested on view, by an officer who had no warrant in his possession at the time of the arrest, and that no complaint had been made against the defendant before the arrest. The record, however, clearly shows that defendant waived all benefit of these informalities and consented to go to trial upon the merits. A written complaint was filed after he was brought into court and he entered a plea of not guilty thereto, having previously waived any and all advantage that might be taken by reason of the method of procedure that was adopted, saving simply the right to object to the form of the complaint. See *Smith* v. *Colloty,* 40 *Vroom* 375, and cases there cited.

The third ground assigned for reversal is that the conviction fails to show of what offence the defendant was convicted, and does not disclose the findings of fact by the borough recorder.

The fourth reason assigned is that the defendant was guilty of no violation of any ordinance or law. By a liberal construction this may be treated as equivalent to asserting that the record of the conviction does not show that evidence was adduced before the recorder to demonstrate that the defendant was guilty.

The ordinance prescribes punishment by fine or imprisonment, or both. By section 11 of the Borough act the procedure in such cases seems to be rendered conformable to the procedure in like cases before justices of the peace, as such. The provision in the same section requiring that the procedure in actions for the recovery of a penalty shall conform to the practice in the small cause court is apparently intended to relate to civil actions properly so called. In the present instance the recorder proceeded summarily to hear and determine the case without jury. We are inclined to think, therefore, that in this proceeding it is necessary that the record of the conviction shall show the essence of a legal

conviction, as prescribed by the English practice in summary convictions (1 *Burn Just.* 391, *tit. "Conviction"*) and by our own adjudications. *Keeler* v. *Milledge,* 4 *Zab.* 142, 146; *Doughty* v. *Conover,* 13 *Vroom* 193, 197; *Hoeberg* v. *Newton,* 20 *Id.* 617; *Hankinson* v. *Trenton,* 22 *Id.* 495; *Preusser* v. *Cass,* 25 *Id.* 532. Amongst other essentials, the record should show the evidence upon which the defendant was convicted and of what offence he was found guilty.

In the return originally made to the writ of *certiorari* herein the recorder embodied a copy of the sworn complaint filed before him, which sets forth with sufficient certainty a specific offence in violation of an ordinance, and the ordinance and section alleged to be violated are sufficiently specified. This was accompanied by a copy of the entries from the recorder's docket, which, presumably, is the record book referred to in section 12 of the Borough act. The docket sets forth the proceedings with considerable detail and mentions that certain witnesses were sworn, but does not set forth the testimony they gave to show that the defendant had violated the ordinance.

To meet this objection the respondent, after the return, applied for and procured from this court a rule requiring the recorder to certify the evidence produced before him and the facts found by him thereon. In response to this order the recorder certified the substance of the evidence, which abundantly supports his findings, and certified, amongst his findings of fact, that the prosecutor did violate the ordinance referred to in a specified manner and at a specified time and place.

It is now contended, in behalf of the prosecutor, that this supplementary return by the recorder cannot be considered as a part of the record. But by the established practice, where it is suggested that the return of an inferior tribunal does not set forth the whole of the proceedings that led up to the judgment under review, a rule for a further return is made in order that this court may be apprised by the certificate of the court below concerning essential matters that do not appear upon the record as originally returned. Thus, in

*Prall* v. *Waldron,* a case decided nearly one hundred years ago, and reported in 1 *Penn.* *145, reversal of the judgment of a justice was prayed for on the ground of irregularities that did not appear upon the transcript of the record sent up by the justice; the prosecutor took a rule on the justice, calling on him to state certain proceedings had before him on the trial of the cause below, and in compliance with this rule the justice made a return denying the facts on which the plaintiff relied for reversal. An attempt was then made to contradict the return by the affidavits of bystanders, but the court would not endure that practice and affirmed the judgment. So in *Angus* v. *Radin,* 2 *South.* *815, the case was heard here upon an amended return setting forth facts that, correctly, would form a part of the record. See, also, *Scott* v. *Beatty,* 3 *Zab.* 256, where it was held that when the record, as returned, fails to set forth a complete state of the case, the proper practice is, in the first instance, to call upon the court to return what the facts were, and that such return is conclusive, and only in the event of the court below failing to make a return can resort be had to affidavits. In *Harris* v. *Central Railroad Co.,* 29 *Vroom* 282, which was a review of a summary conviction had under section 18 of the General Railroad law (*Gen. Stat., p.* 2671, § 129), the court below was called upon (although the report of the case does not show it) to certify in a supplementary return the evidence upon which the conviction was based, and the adjudication here proceeded upon the supplementary certificate.

If matters thus included in an amended return may be availed of for the purposes of reversing the judgment or conviction below, it results, *a fortiori,* that they may be invoked for the purpose of sustaining the action under review. The practice of granting a rule for a further return is quite analogous to the allowance of a *certiorari* as ancillary to a common law writ of error in order to bring up what are known as the outbranches of the record.

The argument made here against consideration of the matters contained in the recorder's supplementary certificate is based upon the ground that it is perilous to the rights of the

citizen to permit the recorder to supplement a record of conviction after the event. We cannot accede, however, to the suggestion that a supplementary certificate of this character is liable to be erroneous, much less corrupt, any more than we can attribute such defects to the original return. If it be objected that a record of the evidence made after the event is less reliable than one made at the time, the answer is two-fold—*first,* it does not appear that the evidence was not recorded at the time of the trial; and *secondly,* the recorder certifies in distinct terms what the evidence was. This negatives the idea that his memory was indistinct or uncertain as to the evidence actually given.

The fifth and sixth grounds of reversal are based upon the fact that the prosecutor's conviction was for a violation of section 10 of an ordinance of November 3d, 1899, which, it is claimed, does not apply to the facts of the case. The averment of the complaint is that the prosecutor, upon a date specified, upon one of the streets of the borough, did hinder and obstruct a certain borough officer, to wit, one John Barry, the street commissioner, in the performance of his duty, the said Barry being then and there engaged in the performance of his duty as such officer—that is to say, in removing from said street certain obstructions which were in the street, and which it was the commissioner's duty to remove. This accusation was supported by evidence, and was found by the recorder to be proved.

The revised Borough act of 1897 provides that in addition to the officers to be elected, certain officers may be appointed by the mayor to perform duties provided by law or by ordinance. An ordinance of the borough of North Plainfield, adopted April 12th, 1886, and presumably ordained pursuant to legislative authority then existing, provides that the street commissioner shall be the overseer of the roads, streets and public grounds in the borough, and it shall be his duty (among other things) to detect and discover every nuisance which may exist in the streets, and forthwith prevent the same, and to prevent said streets from being improperly obstructed and encumbered. The commissioner is likewise authorized to

order to be removed anything which may encumber or obstruct any of the streets in violation of this or of any other ordinance, and in case the same shall not be forthwith removed, after notice given to the offender, it is made the duty of the street commissioner to cause the same to be removed to some suitable place. By section 6 of this ordinance "all persons who shall obstruct, molest, disturb or in anywise hinder the street commissioner in the discharge of any duties mentioned in the ordinance shall be liable to a fine not exceeding five dollars or imprisonment not exceeding ten days, or both."

The prosecutor insists that section 6 of the ordinance of 1886 was in force at the time of the present proceedings, and prescribed a limit of $5 for the fine to be imposed for its violation. The respondent insists that section 6 has been impliedly repealed by section 10 of the ordinance of November 3d, 1899. The latter is a general ordinance relating to the morals and good order of the borough, and contains eighteen sections. The first eight sections prohibit disturbances of the peace, the throwing of dangerous missiles in the streets, the setting off of fireworks in the street, the keeping of disorderly houses, disorderly conduct in the streets, fast driving, and the like. Section 9 declares that no person shall unnecessarily obstruct any street or other public place with any kind of vehicles, or with boxes, lumber, wood or any other thing. Section 10 is the section under which the present prosecution is had. It provides "that no person shall hinder or obstruct any borough officer in the performance of his duties, nor shall any person willfully refuse or neglect to assist any borough officer when lawfully called upon by him so to do in the execution of any process or in the suppression of any breach of the peace or disorderly conduct; or where such officer is resisted in the discharge of his duty; nor shall any person knowingly resist or oppose any officer or person authorized by law in serving or attempting to serve any process or when making any arrest, either with or without a warrant." Section 16 provides a punishment by fine not

exceeding $20, or imprisonment not exceeding seven days, or both, for a violation of any section of the ordinance.

The argument for the prosecutor is that the first clause of section 10, as well as the latter part of the section, relates alone to peace officers and those that have to do with the execution of process. We do not so regard it. The clause "no person shall hinder or obstruct any borough officer in the performance of his duties" applies, by its own terms, to all borough officers, and by necessary intendment extends to all officers whose duties are of such a character as to admit of physical obstruction by bystanders or others in the street. The section that immediately precedes prohibits the placing of inanimate obstructions in the street of a character that it is the duty of the street commissioner to remove or cause to be removed. We think the duty of such removal was within the contemplation of the draughtsman of the ordinance in the framing of section 10. The latter section therefore covers the same subject-matter that was provided for by section 6 of the ordinance of 1886, and amounts to an implied repealer thereof.

The case shows that at the time of the offence charged upon the prosecutor (November, 1903) John Barry was street commissioner of the borough, and acting as such; that certain obstructions were upon the street in question, consisting of certain large timbers and numerous wooden blocks that had been brought there for use in moving a frame dwelling-house, for the moving of which license had been refused by the mayor and council; that Barry notified the persons who had placed the obstructions in the street to remove them, and they refused to do so, and persisted in their endeavor to move the house along the street; that it was the duty of the commissioner to remove these obstructions, and that he endeavored to remove them from the street; that for this purpose he attached a team of horses to one of the timbers which was lying near the middle of the street and started to drive the team towards the side of the street, so as to haul the timber out of the way; and that in this juncture the defendant, Goodwin, seized the horses and stopped them, and for a time

prevented the street commissioner from removing the obstructions and hindered and obstructed him in the performance of his duty. In our view, this was plainly an offence within the fair intendment of section 10 of the ordinance of 1899.

The remaining grounds assigned for reversal were abandoned upon the argument, and have not been considered by us.

The conviction under review should be affirmed, with costs.