ALBERT FOGG v. OCEAN CITY AND OCEAN CITY UTILIZA-
TION AND SEWERAGE COMPANY, AND ANOTHER.

Argued November 7, 1906—Decided February 25, 1907.

1. An owner of real estate, whose buildings are connected with the sewers of a sewer company, who has paid sewer rent therefor, may question by *certiorari* an ordinance granting to a new company the right to take over the plant of the old company, and the right to lay its pipes and system of sewerage beneath the surface of the streets, and fixing higher rates for sewer rentals.

2. The act for the government of certain cities (*Pamph. L.* 1897, *p.* 46) gives the city council power to prescribe the manner in which shall be exercised any privileges granted in the use of streets or in digging up streets for the purpose of laying down pipes. *Held,* that this power does not authorize the city council to make an original grant of such privileges, but only to regulate the exercise of privileges otherwise acquired.

3. A company organized under the General Corporation act of 1896 is not authorized to lay sewers in the public streets.

On *certiorari.*

Before Justices HENDRICKSON, SWAYZE and TRENCHARD.

For the prosecutor, *Bourgeois & Sooy.*

For the defendants, *Thompson & Cole.*

The opinion of the court was delivered by

SWAYZE, J. This case involves the validity of an ordinance of Ocean City granting to the Ocean City Utilization and Sewerage Company the right to lay pipes beneath the surface of the streets and to construct, operate and maintain a system of sewerage in the city, and fixing the charges. This ordinance was adopted August 20th, 1906. The utilization and sewerage company was a corporation under the General Corporation act of 1896. In 1893 an ordinance had been passed by the city providing for sewer drainage by what was called the Ocean City Sewer Company, and that ordinance fixed the rates and charges for sewer rentals; these rates were paid by the prosecutor until the passage of the ordinance of August 20th, 1906, which provided for higher rates. Some question had been raised as to the procedure for the incorporation of the Ocean City Sewer Company, which I shall hereafter call the old company, and the utilization and sewerage company, which I shall call the new company, had been incorporated for the purpose of taking over the plant of the old company. The ordinance, however, is not limited to granting permission to the new company to take over the plant of the old company, but in its enacting part grants to the new company, as an

original grant, the right to lay its pipes and its system of sewerage beneath the surface of the streets.

The first question is whether the prosecutor has a sufficient interest to justify him in prosecuting the *certiorari*. The case shows that he owns real estate and that his buildings are connected with the sewer pipes of the old company and that he has paid the sewer rent therefor. He had therefore at least a license to discharge sewage through the sewers of the old company, and the present ordinance is one step in a process by which those sewers are to be turned over to the new company and the prosecutor's rates increased. It does not indeed appear that the prosecutor's land abutted upon any of the streets in which sewers were to be laid, but it has been held by the Court of Errors and Appeals that where a man has a sewer or drain laid across a public street he has a property right in his sewer, even though that right may be only the right of a licensee. *Miller* v. *Greenwich,* 33 *Vroom* 771. This property right of the prosecutor is sufficient to bring the case within the rule stated in *Oliver* v. *Jersey City,* 34 *Id.* 96, which was approved upon this point by the Court of Errors and Appeals. *Id.* 635.

The second question is whether Ocean City could grant a right to lay sewers to a corporation organized under the general act. The answer depends not merely upon the power conferred upon the city by the act of 1897 (*Pamph. L., p.* 46), but also upon the powers conferred upon the new company by the General Corporation act. The act of 1897 (*Pamph. L., p.* 52, *pl.* 7) gives the city council power to prescribe the manner in which shall be exercised any privileges granted in the use of the streets or in digging up the streets for the purpose of laying down pipes. It also authorizes (*Pamph. L., p.* 52, *pl.* 8) the council to lay drains or construct sewers in the streets, but this latter power evidently relates to sewers constructed by the city itself, for it authorizes the cost to be assessed on the owners of property benefited by the improvements, and this provision is quite inapplicable to sewers constructed by a private company for private gain. The only authority of the council under the act of 1897 is to regulate the exercise of

privileges granted by the authority of other acts. It does not extend so far as to authorize the council to make an original grant of such privileges. The grant to a sewer company, for example, is authorized by the act of June 13th, 1890 (*Gen. Stat., p.* 2193, *pl.* 326), and in our view the only effect of the provision of the charter above referred to is to authorize the city council to direct the manner in which a privilege already granted under the act of 1890 might be exercised. The Water Company act of 1876 also makes the incorporation of the company and the right to lay pipes dependent upon the consent of the municipal authorities. The Gas Company act (*Gen. Stat., p.* 1610, *pl.* 17) contains a similar provision, and the Street Railway Company acts make the right of the corporation dependent upon municipal consent. *Pamph. L.* 1896, *p.* 329. Some of these acts contain special provisions intended to safeguard the rights of the public in the public streets. No such safeguards are provided by the act of 1897, to which reference has been made. We think the course of legislation clearly indicates that the grant of the right to use the public streets for various purposes was intended by the legislature to be controlled in each case by the statute applicable to that particular case, and to be surrounded by such safeguards in each case as the legislature had provided. It would conflict with this legislative policy to hold that the common council of a city, governed by the act of 1897, had the power to grant rights in the public streets without any of these safeguards. The language of the act does not indicate that it had so broad a scope. It was rather intended to provide an additional safeguard for the public interests by putting under the control of the city council the manner in which privileges granted under the different acts might be exercised, or in other words, to confer by express statute upon the city the police power over the streets which might be exercised notwithstanding existing rights to the use of the street. *Cook* v. *North Bergen,* 43 *Vroom* 119; *affirmed,* November 19th, 1906. The case differs from the case of *Benton* v. *Elizabeth,* 32 *Id.* 411; *affirmed, Id.* 693. In that case the National Transit Company had pur-

chased such a right in the lands in question as would entitle it to lay pipes for the transportation of oil, if the land had not been subject to the easement of a public street; the only privilege asked of the city was that of opening a public street, and this court recognized the distinction between the grant of privileges in the use of streets and the exercise of privileges already possessed.

There is another equally serious objection to the ordinance. The new company is organized under the General Corporation act of 1896, and while its purpose is undoubtedly lawful within the meaning of the supplement of 1899 (*Pamph. L., p.* 473), it can have no powers not conferred by the act under which it is organized. That act contains no provision authorizing a corporation organized thereunder to lay sewers in the public streets, and the provisions of the certificate of incorporation authorizing it to construct, maintain and operate a system of sewerage in Ocean City, cannot confer upon it a power not given by the act. The fact that the legislature has provided for the incorporation of sewer companies which desire to construct, maintain and operate a system of sewerage in the municipalities of this state, and has by that act required a compliance with certain conditions intended to protect the public, is proof that it was not the intent that such a power should exist under the General Corporation act. The present General Corporation act is a revision of statutes which existed prior to the passage of the act of 1890. At that time the then existing General Corporation act, like the present, authorized the incorporation of a company for any lawful business and purpose whatever. *Pamph. L.* 1888, *p.* 112. The act of 1890 would never have been adopted by the legislature if it had intended that corporations with the same powers might be organized under the Corporation act of 1875 and the supplements thereto. The same argument is clearly applicable to the act of 1896, since that is only a revision of the act of 1875. *Smith* v. *Colloty,* 40 *Vroom* 365, 370.

A similar result was reached in *Richards* v. *Dover,* 32 *Vroom* 400.

We think that the ordinance brought up by the writ in the present case is invalid.

In reaching this result we do not in any way pass upon the validity of the proceedings to incorporate the Ocean City Utilization and Sewerage Company. No doubt a corporation with some of the powers of that company may be organized under the General Corporation act. We assume for the purpose of this case that the corporation has a legal existence. All that we hold is that it cannot acquire rights in the streets of our municipalities, and that those rights can only be acquired under the act of 1890, above cited.

The ordinance certified must be set aside, with costs.