HARRIET HOAGLAND et al.

*v.*

THE SUPREME COUNCIL ROYAL ARCANUM et al.

[Decided September 28th, 1905.]

1. Where, in a suit in equity to obtain relief for which there is an adequate remedy at law, defendant does not demur, but answers without claiming the benefit of a demurrer, it is left to the discretion of the court to retain or reject jurisdiction.

2. If in such a suit the suggestion of an adequate remedy at law was not made until after the evidence was all in and after a long time had been taken in which to file briefs, it is proper to retain jurisdiction where complainants are subject to limitation of time within which to bring actions.

3. Where an applicant for membership in a mutual benefit association was notified by a printed statement, handed him by the investigating committee, that he was ineligible if either of his parents had died of consumption, after which he untruthfully answered in the negative questions as to whether any of his near relatives had died of that disease, and made a false answer as to the cause of the death of his mother, who had in fact died of consumption, such statements, whether regarded as representations or warranties, rendered the certificate void.

· Heard on bill, answers, replications and proofs in open court.

This is a bill filed by Harriet Hoagland and Mary J. Walmsley against the Supreme Council of the Royal Arcanum and Henry M. T. Beekman, as trustee for Harriet Hoagland, Martin Hoagland, Ellen B. Walmsley and Mary J. Cook.

Harriet Hoagland was the maternal grandmother of John Edward Walmsley. Mary J. Walmsley was his paternal grandmother.

A benefit certificate for $3,000 was issued by the Supreme Council of the Royal Arcanum, under its seal, to John Edward Walmsley, on the 9th day of May, 1899. In this certificate the beneficiary named was Edward Walmsley, the father of John Edward Walmsley. Edward Walmsley died on the 6th day of August, 1899. John Edward Walmsley, the insured, died on the 5th of October, 1900, of phthisis pulmonalis, or consumption·of the lungs. Just before his death, and on the 17th of September, 1900, he filled out a form for change of beneficiary. He surrendered and returned his benefit certificate and directed that a new one be issued to himself, payable to the following-named beneficiaries: Henry M. T. Beekman, trustee for Harriet Hoagland, grandmother, one-quarter; Martin Hoagland, uncle, one-quarter; Ellen B. Walmsley, stepmother, one-quarter; Mary Jane Cook, aunt, one-quarter.

This request for change of beneficiary was somewhat delayed in reaching the proper officers of the Supreme Council of the Royal Arcanum, and when it did reach them was not approved because it designated as one of the beneficiaries the stepmother of the insured, and such stepmother was not one who might be named excepting as a dependent, and the rules of the order required proof of dependency.

The member died with this question still unsettled.

The bill alleges that the Supreme Council of the Royal Arcanum has kept the benefit certificate .and refuses to surrender it; that the complainants are entitled to the amount agreed to be paid by the terms of the certificate because the change of beneficiaries was not effected in accordance with the require-

ments of the defendant order, and it is provided that where a named beneficiary predeceases the member, and no proper change of beneficiary has been made, payment shall be made to certain ascertained and defined persons, and that they are such persons.

The bill therefore prays that a decree shall be made determining who are the proper beneficiaries of John E. Walmsley to whom payment of the amount of the benefit certificate should be made.

The answer of Henry M. T. Beekman, trustee, in the main admits all of the allegations of the bill, excepting with respect to the charge that no proper change of beneficiaries was effected.

The answer of the Supreme Council of the Royal Arcanum admits the issuance of the certificate, the death of the insured, the receipt of proofs of death, and also that the request for change of beneficiary was received, but alleges that the same was not in accordance with the requirements as set forth in the laws of the order, and that it was therefore not effective. It denies, however, that it owes the money named in the certificate to anyone, because it alleges that certain statements made by the member in the application were untrue, were material, and were warranted to be true, and that by reason of such untrue statements the insurance or indemnity is null and void, and no recovery can be had by anyone in virtue thereof.

It further alleges that a period of three years, limited in the certificate within which suit should be brought, had elapsed before the beginning of this suit, and concludes as follows, after summarizing the various defences:

"Therefore this defendant, further answering to said bill of complaint, does not and cannot concede to either these complainants, or to the other defendants in this action, any rights whatever as to the fund which is claimed from the defendant society by reason of the issue of the said certificate; but that it hereby tenders and makes offer of its constitution and by-laws, which it will put in evidence, so that in case this honorable court shall reach such point in considering the matters presented to it, as to determine the rights of beneficiaries therein, it may do so in accordance with such constitution and laws."

*Mr. Henry Traphagen,* for the complainants.

*Mr. Henry M. T. Beekman,* for H. M. T. Beekman, trustee.

*Mr. W. Holt Apgar,* for Supreme Council Royal Arcanum.

GARRISON, V. C.

The first question requiring consideration is whether this court should determine the issues raised in this suit.

There is no equitable question involved.

The sole thing sought is a recovery by certain persons of a sum of money alleged to be due from an insurer.

The sole ground on which it could be suggested that a court of equity could obtain jurisdiction is the retention by the defendant corporation of the instrument evidencing the contract out of which the rights in this case grow and upon which the complainants' rights must be founded.

It will be observed that there is no affidavit of loss, destruction or detention in the possession of the defendant of this instrument. Had the defendant corporation demurred to the bill, I am clear that the demurrer must have been sustained. *Fonb. Eq.* (*4th Am. ed.*) *book 1 p. 32 ch. 1 § 3; Story Eq. Jur.* (*13th ed.*) *95.*

I am further of opinion that if, at the commencement of the trial of the case in open court, the defendant, notwithstanding that it had not demurred, and had not in its answer claimed benefit as if it had demurred, had made a motion to dismiss the bill because there was an adequate remedy at law, the court would have granted it. The defendant, however, not only did not pursue this course, but by its pleading practically submitted itself to the jurisdiction of the court, as will be seen from the excerpt from the answer quoted in the preceding part of this opinion.

It is a very ancient head of equity jurisdiction to entertain suits upon sealed instruments which have been lost or destroyed, or which have come into the possession of the defendant, who retains the same. *Fonb. Eq., supra; Sm. Eq. Man.* (*1st Am.*

*ed., 9th London ed.*) *39 et seq.; Dan. Ch. Pr. & Pl.* (*6th Am. ed.*) *552, 545; Story Eq. Jur.* (*13th ed.*) *89 et seq.; Pom. Eq. Jur.* (*3d ed.*) *77 § 71; Reeves* v. *Morgan, 48 N. J. Eq.* (*3 Dick.*) *428* (*Vice-Chancellor Pitney, 1891*).

While there may be, and I think is, a serious question whether a suit of this nature would be entertained by a court of equity under the facts stated in the bill, if the defendant corporation seasonably called attention to the adequacy of the legal remedy, I do not stop to consider or decide this question, because I think that the defendant, by not demurring, by answering without claiming the benefit of demurrer, and by tendering itself ready to litigate the subject in the court of chancery, at least leaves it discretionary with this court to retain or reject jurisdiction.

Since the defendant did not suggest that there was an adequate remedy at law until after the evidence was all in, and after counsel had taken a long time in which to file their briefs, and in its written brief for the first time raises the question, I conclude that the discretion of the court should be exercised in favor of jurisdiction. *Mertens* v. *Schlemme, 68 N. J. Eq. 544* and cases cited (at *p. 549*).

I think it would be unfair to complainants, who are subject to limitations of time within which to bring actions, to refuse to retain jurisdiction at the stage of the case when the objection in this case was made.

In my view, the primary question is whether anyone is entitled to recover the amount of the benefit certificate issued to John Edward Walmsley.

If the determination was that the defendant corporation was liable to pay the amount of said certificate, then questions of interest and importance would arise with respect to the persons to whom they were liable. Since I have reached the conclusion that there is no liability on this certificate, I do not find it necessary to investigate the questions as to who would be entitled to the money if it were due.

John Edward Walmsley made written application for membership in the Royal Arcanum at a branch located in Jersey City on the 18th day of April, 1899. In his signed application

for membership he stated that he was born on the 31st day of May, 1877, and was between twenty-one and twenty-two years of age, and in said application it was further stated by the applicant:

"I do hereby warrant the truthfulness of the statements in this application, and consent and agree that any untrue or fraudulent statements, or any concealment of facts therein, * * * shall forfeit the rights of myself and my beneficiaries, heirs and all other persons claiming under my benefit certificate issued hereon, or from my membership in the order, to all benefits and privileges therein."

In pursuance of the custom and the rules of the order, an investigating committee was then constituted, at least one of whom met the applicant and either read to him or gave to him to read certain extracts from the rules governing medical examinations. Among such extracts were the following:

"If consumption is found to have occurred, or to be at present existing in the family, the applicant is to be regarded as not eligible, and must be rejected under the following circumstances: If in both parents, not eligible until forty years of age; if in one parent, not eligible until thirty years of age; if in any two members of the family, among the parents, brothers or sisters, not eligible until thirty-five years of age."

At the same time a printed question was handed the applicant, as follows:

"Has there been a case of consumption among your parents, brothers or sisters, or other near relatives? If yes, give particulars." To which the applicant gave the written answer "No."

Thereupon the applicant, in the presence of a member of the investigating committee, who witnessed his signature, signed the paper, which concludes with the following:

"*Q.* Having read the foregoing extract from the rules governing medical examinations, do you still desire to undergo a medical examination? "*A.* Yes."

In the medical examination, among the questions and answers appear the following, under the head of "Family Record of Applicant:"

*4 Robbins.* Hoagland *v.* Supreme Council, Royal Arcanum.

"Mother, age 34. Cause of death, pneumonia. How long sick, 8 days. Previous health, good.

"*Q.* Have any of your near relatives, including uncles and aunts, been afflicted with consumption, raising of blood, rheumatism, gout, insanity, or with pulmonary, scrofulous, cancerous or any hereditary disease, or have any of them every attempted suicide?

"*A.* No.

"*Q.* Have you named every such case?

"*A.* Yes."

The applicant signed his name to this statement, and immediately above his signature appears this declaration:

"I hereby warrant the truthfulness of all the answers and statements given to the above questions."

The benefit certificate itself, bearing date, as heretofore stated, on the 9th day of May, 1899, contains the following language, which is pertinent to this inquiry: That it is issued

"upon condition that the statements made by him in his application for membership in said council, and the statements certified by him to the medical examiner, both of which are filed in the supreme secretary's office, be made a part of this contract."

As a matter of fact, the mother of the applicant died of phthisis, or consumption of the lungs, in the year 1888. The corporate defendant proved this, but the complainants insist that they must go further and prove that the insured had knowledge of the cause of his mother's death, and had knowledge that ·she had consumption.

Whether the statements thus made part of the contract are to be construed as warranties or as representations is not, in my view, of any moment in the case in hand. By incorporating them by reference into the contract, the insurer has complied with one of the necessities of making such statements warranties. *American Popular Life Insurance Co.* v. *Day, 39 N. J. Law (10 Vr.) 89 (Court of Errors and Appeals, 1876)*; *Bac. Ben. Soc. 249 § 194 et seq.*

But whether the insurer was successful in thus making such statements warranties was left open by our court of errors and appeals in passing upon a similar contract. *Lippincott* v. *Royal*

*Arcanum, 64 N. J. Law (35 Vr.) 311 (Court of Errors and Appeals, 1899).*

The court of appeals of New York has held that the statements thus incorporated into this contract are warranties. *Foley v. Royal Arcanum, 151 N. Y. 196.*

If warranties, they must be true, whether they concern material matters or not. If not warranties, but representations, they must concern a material matter to have the effect of avoiding the contract if untrue.

The tendency of modern decisions is to give but little weight to the characterization by the parties of the statements. Even though they be literally warranties within the terms of the contract, the court deals with them in view of the spirit and purpose thereof. *Dimick v. Metropolitan Life Insurance Co., 69 N. J. Law (40 Vr.) 393 (Court of Errors and Appeals, 1903).*

Construing the contract in this way, the court refuses to avoid the policy because of the untruth of an immaterial statement, but if it finds that the statement was material, and was an inducing cause of the insurer making the contract, then it requires good faith in the applicant if the subject-matter be one of which he cannot have absolute knowledge, and absolute knowledge if the subject-matter be one concerning which he either has or assumes to have such.

There are certain matters concerning which the insurer requires an absolute assurance before entering into the contract. Without seeking to define or classify these matters, one of them certainly is the vital question of the presence of a fatal hereditary taint in the family of the applicant.

Whatever may be held with respect to an answer negativing the presence of such an hereditary taint in the living members of the family, concerning which it might be successfully contended that the applicant could not know, it certainly must be held that where the mother of the applicant died of the disease inquired about, the applicant must be held either to have had knowledge thereof, or to take the responsibility of correctly giving the cause of death and the presence or absence of the disease inquired about.

The modern rules of construction of insurance contracts are well summarized in a case in Alabama, quoted with approval by Bacon (at *p. 263 § 203*). *Alabama Gold Life Insurance Co.* v. *Johnston, 80 Ala. 467; 2 South. Rep. 128.*

"1. That the answers of the assured were not absolute warranties, but in the nature of representations; or, if warranties, they are so modified by other parts of the contract as to be warranties only of an honest belief of their truth.

"2. That any untrue statement or suppression of fact, material to the risk assured, will vitiate the policy, and thus bar a recovery, whether intentional or within the knowledge of the assured or not.

"3. If immaterial, such statement, to avoid the policy, must have been untrue within the knowledge of the assured; that is, he must either have known it, or have been negligently ignorant of it."

Bacon says (at *p. 319 § 230*):

"The age of the parents of the applicant at the time of their death, the diseases of which they died, and facts relating to the relatives and family of the applicant, are all material and must be truly stated. Answers to these questions assume knowledge, as in a case where the assured, in his application, answered 'No' to the question whether either of his parents, brothers or sisters had ever had pulmonary, scrofulous or other constitutional or hereditary diseases, in which it was held that the answer assumed his knowledge of the fact, and in an action on the policy the beneficiary was precluded from alleging the want of knowledge on the part of the insured as an excuse for not answering correctly."

An application of these principles to the facts of the case in hand leads inevitably to the conclusion that this contract must be avoided.

This applicant, before he was examined, was informed by a printed extract from the rules of the order that if there had been a case of consumption among his parents he was not eligible to membership at his then age. He replied that there was not consumption among his parents, and stated that, having knowledge of the above rule, he desired to undergo the medical examination.

In the course of this medical examination he stated that his mother died of pneumonia, when as a fact she died of phthisis pulmonalis, or consumption of the lungs. In reply to a ques-

tion as to whether there had been consumption among his near relatives he answered "No."

I am entirely clear that where an applicant, who has been thus warned with respect to matters which the insurer deemed vital, and in the court's view had a right to deem vital, to the making of the contract, and in the face of this warning assumes knowledge and negatives the existence of such an hereditary disease in his parents, the contract must be avoided if, as a fact, such disease existed in the parents.

However righteous it may be to construe contracts of this description in the most liberal way, so as to give effect to what the courts find to have been the real intent of the parties, such liberality in favor of the insured must never lead the court to disregard the rights of the insurer with respect to so vital a matter as the one dealt with in this case.

I therefore hold that because of the incorrect statements by the applicant concerning the cause of his mother's death and of the absence of consumption in his parents, this insurance contract is void and no recovery can be had thereon.

I will advise a decree dismissing the bill.