ELLEN GILROY, RESPONDENT IN ERROR, v. SUPREME COURT INDEPENDENT ORDER OF FORESTERS, PLAINTIFF IN ERROR.

Argued June 27, 1907—Decided November 18, 1907.

1. A benefit certificate provided that the secretary of the medical board of the order should have power to reconsider any medical examination within six months after passing the same, and if there be sufficient cause which existed at the time of the examination to have rejected it, he may reject it, whereupon the assured shall cease to be a beneficiary member of the order. *Held,* that in a suit upon the certificate, the defendant, in order to sustain a defence that the medical examination was reconsidered and rejected, must prove that it was for a sufficient cause which existed at the time of the original examination.

2. The fact that one parent of the assured died of phthisis before the medical examination is not of itself enough to prove that sufficient cause existed for the rejection of the assured.
3. An inquiry made of an applicant for insurance as to the cause of his father's death, calls not for a definite statement of fact, but for the *bona fide* belief and opinion of the applicant.
4. In the present case, the provision that the decision of the supreme court of the order shall be final and conclusive, is intended only to mark the distinction between the effect of the decision of the supreme court of the order and that of its other courts, and not to exclude the jurisdiction of the legal tribunals.

On error to the Supreme Court.

For the plaintiff, defendant in error, *Cecil H. MacMahon* (*Riker & Riker* on the brief).

For the defendant, plaintiff in error, *Craig A. Marsh.*

The opinion of the court was delivered by

SWAYZE, J. This is an action upon a benefit certificate on the life of Thomas F. Killoran, for the benefit of his mother, Ellen Gilroy. The defences relied upon are:

*First.* That within six months after the medical examination of Killoran had been passed, the secretary of the medical board reconsidered it and rejected it.

*Second.* That Killoran, in his application for membership in the order, falsely represented that his father died of pneumonia, when in fact he died of phthisis.

*Third.* That the courts of the order decided adversely to the plaintiff's claim, and that their decision was final and conclusive.

In order to understand the first ground of defence it is necessary to consider with care the exact language of the contract. It provides that the secretary of the medical board of the defendant shall have power to reconsider any medical examination within six months after passing the same, and if there be sufficient cause which existed at the time of the examination to have rejected it, he may reject it, whereupon

such member shall cease to be a beneficiary member of the order.

The plea significantly omits to aver that there was a rejection for sufficient cause, and the stipulation as to facts merely sets forth that the secretary reconsidered and rejected the medical examination, but does not set forth the cause. A letter is printed in the book from one Williams to one Wright, notifying the court to which Killoran belonged that the examination had been reconsidered and rejected by the medical board because he did not give a correct report in reference to family history. The communication adds that had the same been given he would have been rejected in the first place. This notice is not evidence of the cause of rejection or its sufficiency. It seems to be no more than notice to the subordinate court of the fact of rejection. But aside from that, it shows a rejection by the medical board, a body which by the contract consisted of three physicians and the supreme chief ranger, and perhaps a president and secretary in addition. A rejection by such a board may well have been in spite of the vote of the secretary, to whom alone the contract committed the right of review. In this respect, however, we must be guided by the stipulation which admits that it was the secretary who reconsidered and rejected the examination. The failure to prove a rejection by him for a sufficient cause is an answer to this defence. The subsequent action of the supreme chief ranger, which was affirmed by all the courts of the order, placed the rejection not on the defect in family history, but on the fact that the assured had made a false statement in his medical examination paper. What the false statement was is not specified. There is no proof of any other cause, and the Chief Justice was therefore quite right in charging the jury that the cause of the rejection was Killoran's failure to give a correct report in reference to his family history. Counsel for the defendant urges that it was unnecessary to prove the cause which led to the rejection, and this would be so if the right to reject had been absolute. Such was not the case. The examination could only be reconsidered and rejected for a sufficient cause which existed at the time of

the examination, and it is not proved that an incorrect statement was sufficient.

The defendant is not helped if we assume the cause of rejection to have been the fact that the death of the assured's father was caused by phthisis. It would still be incumbent upon the defendant to prove that this would have been a sufficient cause within the contract. No doubt such a family history may be a sufficient reason for rejection, and we might perhaps so assume without proof, but in interpreting a clause which works a forfeiture we ought to adopt such a construction as may save the contract. We think the parties, by the use of the words "sufficient cause," meant more than a sufficient reason. They meant such a state of things as would in fact, as distinguished from such as might in reason, but would not in fact, lead to a rejection. There is no evidence to show what the rule or custom of the defendant or of other insurers is as to the acceptance or rejection of a risk where the father of the assured has died of phthisis. If the rules of another order, as reported in *Hoagland* v. *Supreme Council, Royal Arcanum,* 4 *Robb.* 607, were followed by the Independent Order of Foresters, the question of acceptance would depend on the age of the applicant. It probably depends in each case upon the age of the applicant, his occupation and environment, his general prospect of life, the facts of the family history, taken as a whole, and the view taken by the insurers of the transmissible quality of the disease, or of parental tendencies and weaknesses.

The Royal Arcanum case above cited shows that the father's death from phthisis would not necessarily cause a rejection, and the failure of the defendant in this case to plead or prove that the fact would have been sufficient to cause Killoran's rejection is fatal to this defence.

So, likewise, a false statement may or may not cause a rejection, depending upon the importance of the statement and the likelihood of its having been honestly made.

The defence of false representation rests upon the same false statement that the father died of pneumonia when he in fact died of phthisis. The question as to the admissibility of

588     COURT OF ERRORS AND APPEALS.

Gilroy v. Indep. Order of Foresters.     75 N. J. L.

the physician's book and the parish record to prove the cause of death becomes of no importance since the Chief Justice did not reject the physician's certificate, but said he would admit it upon proof that the person named was the father of Killoran, and that the assured knew the cause of his father's death, and in the charge he assumed that the fact sought to be proved was true. He left it to the jury to say whether the assured answered the question honestly, and told them that if Killoran knew the answer was incorrect, or had no knowledge at all and made the answer without belief that it was true, the plaintiff could not recover.

The question is presented, therefore, whether the answer must be absolutely true in order to prevent the forfeiture, or whether it suffices that the assured honestly believed it to be true. Whether the statements are to be regarded as warranties or as representations is not important. If representations, they were as to a fact material to the risk, and the obligation of the assured to answer truthfully was as great as if his answers were warranted to be true.

The rule adopted by this court is that, with respect to questions as to matters that the insurer must know are not within the personal knowledge of the applicant, and with respect to those that call, not for definite statements of fact, but for statements of belief or opinion, the letter of the contract is to be controlled by its spirit and purpose, and the answers will be deemed warranties only of the *bona fide* belief and opinion of the applicant. *Henn* v. *Metropolitan Life Insurance Co.,* 38 *Vroom* 310; *Dimick* v. *Metropolitan Life Insurance Co.,* 40 *Id.* 384, 393, from which the above language is quoted.

In determining whether or not the warranty is an absolute one or only of the applicant's honest belief, the court may also be aided by a consideration of all the language of the contract. *Moulor* v. *American Life Insurance Co.,* 111 *U. S.* 335.

In the present case the applicant was asked if any of his grandparents, or uncles, or aunts, or parents, or brothers, or sisters, or other relatives, had been afflicted with many enumerated diseases, of which phthisis was one. And the consti-

tution and by-laws provide that if the applicant makes any false statement, or gives any untrue answer, or conceals or neglects to disclose any material fact relating to himself or to any of his kindred, in his medical examination, he shall, *ipso facto,* forfeit all payments he may have made and all benefits that he or his beneficiaries would otherwise be entitled to receive. We cannot believe that the insurer could have intended by the provision as to facts relating to kindred and the question as to other relatives to require anything more than the best information of the applicant. The words "any of his kindred" in the by-laws, and the words "other relatives" in the interrogatories, must mean kindred and relatives more remote than grandparents, uncles or aunts, for as to these the inquiry is specific. If literally construed, the words "kindred and relatives" would extend to the very remotest degree.

Probably no one can be found whose family history is so perfect that some relative in some degree has not had one of the diseases named. The applicant, in order to answer with absolute truth, would necessarily have to answer, "I don't know," and the insurer is not likely to have asked a question to which a confession of ignorance would be the only possible answer that would be absolutely true. Such an inquiry would be idle. What the insurer must have sought was the knowledge and honest belief of the applicant, and since this same question includes the inquiry as to the father, the same limitation applies to that inquiry.

This reasoning does not indeed apply to the inquiry as to the cause of the father's death, but that inquiry can hardly be given a wider scope, since the father may have died before the birth of the applicant and the only knowledge he may have must be hearsay. In this very case the applicant was only five years old when his father died. Moreover, in the ordinary case the only knowledge the applicant can have must be derived from others, usually perhaps the attending physician, who may himself have made a false diagnosis. It would be possible for the applicant to protect himself by answering, "I don't know," but in that respect the same reasoning applies

590    COURT OF ERRORS AND APPEALS.

Gilroy v. Indep. Order of Foresters.    75 *N. J. L.*

that has already been stated. We must assume that in asking a question as to which ordinarily the applicant must depend upon hearsay only, the insurer sought only to ascertain his honest belief.

It is said that the cause of the father's death is a matter of public record, and susceptible therefore of exact knowledge, but it is obvious that the correctness of the public record ordinarily depends upon the accuracy of the diagnosis and report of the attending physician, and not on the personal knowledge of the applicant, and the record is as open to the insurer as to the applicant. This argument would lead only to the view that what the insurer sought was the applicant's knowledge of the contents of the record.

The provision of the policy authorizing a reconsideration of the medical examination sustains this view. It would be quite unnecessary to reserve this right if the policy was already void for false representation or breach of warranty, and to provide, as the benefit certificate does, that upon such reconsideration and rejection the member should cease to be a beneficiary member. This language is not apt to cover a case where the applicant, by reason of his false statements, had never been a beneficiary member. That is this case, for the benefit certificate was not merely voidable. It was, *ipso facto,* "nulled" and void by the very terms of the application if there was any concealment, misrepresentation or false statement. The provision of the certificate allowing a reconsideration indicates that the defendant recognized the fact that statements not absolutely true might be made, and reserved six months during which it might make independent inquiries, and recognized also the fact that false statements might be made which would not be sufficient to justify a rejection of the risk.

The Court of Chancery took a different view in *Hoagland* v. *Supreme Council, Royal Arcanum, supra.* The provisions of the policy in that case seem to have been different from those of the one now in suit, and the opinion of the learned Vice Chancellor dwells upon the warning there given to the applicant as to the importance of a correct answer as to the cause

of death of his parents. If the opinion is to be read as holding that in every case the statement as to the cause of a parent's death must be absolutely true on pain of forfeiture, we cannot adopt it. The question must in each case be determined by the nature of the inquiry and by the language of the whole contract. In the present case we think the inquiries in question were meant to ascertain the applicant's honest belief only, and the Chief Justice submitted the proper questions to the jury.

The third defence is that the decision of the courts of the order against the plaintiff was final and conclusive. We do not now find it necessary to determine whether an agreement that the decision of the courts of the order shall be final and conclusive as to the legal liability of the order itself is enforceable, or whether it is illegal because it ousts the ordinary courts of law of jurisdiction. The benefit certificate does not make a favorable decision by the courts of the order a condition precedent to the right of action, and if it binds the member to seek redress in the order as to his property rights, that condition has been complied with. The question is, What is the proper construction of the contract in this respect? The clause making the action or decision of the supreme court of the order final and conclusive occurs in the provision for appeals, which provides that the right of appeal shall be vested in every court, and that an appeal shall lie against the action or decision of any officer or of any court, except the action or decision of the supreme court, and that is made final and conclusive in all cases. We think the words "final and conclusive" were intended to mark the distinction between the effect of the decision of the supreme court of the order and that of its other courts, and not to exclude the jurisdiction of the legal tribunals. The supreme court of the order is the very corporation whose contractual liability is in question, and we ought not to adopt a construction which would make it the final judge in its own cause. Such a construction is so out of harmony with fundamental principles that only the clearest and most unequivocal language would lead a court to adopt it. Effect can be given to the words "final" and

"conclusive" by holding that they are final and conclusive within the order itself, without holding that they were exclusive and meant to oust the jurisdiction of our courts. Such we think is the proper meaning to be attributed to this clause, and this defence also fails.

We find no error in the record, and the judgment is affirmed, with costs.

*For affirmance*—HENDRICKSON, SWAYZE, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.    9.

*For reversal*—MAGIE, CHANCELLOR, GARRISON, PITNEY, REED, J.J.    4.