DELPHINE SMITH, DEFENDANT IN ERROR, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PLAINTIFF IN ERROR.

Submitted June 24, 1912—Decided November 18, 1912.

1. Where the applicant for life insurance certifies that his health is good according to the best of his knowledge and belief, a recovery may be had on the death of the assured if it appear that he had reason to believe and did believe that at the time he was in good health, although it subsequently develops that this was not in fact his condition, for his statement was not unqualified, but only to the extent of his knowledge and belief.
2. The applicant's reputation "for being an intemperate user of alcoholic beverages" is not admissible to contradict a statement in his application for life insurance that while he used intoxicating liquors he did so temperately, for it is not offered to affect credibility but in denial of a fact pertinent to the issue raised and not difficult to prove, if true, by the acts of the insured.

---

On error to the Supreme Court, Cumberland Circuit.

For the plaintiff in error, *Louis H. Miller* and *Edward D. Duffield.*

For the defendant in error, *Howard Carrow* and *William J. Kraft.*

The opinion of the court was delivered by

BERGEN, J.   This writ was brought to correct alleged errors at the trial of the issues embraced in a Supreme Court record, sent to the Cumberland County Circuit Court for trial, at which the plaintiff recovered a verdict for the amount due on a life insurance policy, on which the judgment under review was entered in the Supreme Court.

The errors assigned are directed to the charge of the court; to the construction by the court of the policy and the written application therefor, which by its terms is made a part of the contract of insurance, and to rulings on the admission and rejection of testimony.   The application contained a number of questions, and answers made to them by the applicant, the correctness of which he affirmed by the following declaration:   "I hereby declare that all the statements and answers to the above questions are complete and true to the best of my knowledge and belief, and I agree that the foregoing, together with this declaration, shall constitute the application and become a part of the contract of insurance hereby applied for, and it is further agreed that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained, and the said policy shall not take effect until the same shall be issued and delivered by the company, and the first premium paid thereon in full, while my health is in the same condition as described in this application."

This certificate was signed by the applicant July 12th, 1909, and on August 12th, 1909, he was examined by the physician of the defendant, who reported the applicant to be a first-class risk.   The first premium was paid by the insured, and the policy delivered to him on August 20th, 1909.   He died July 2d, 1910.

The first point argued as a ground for reversal is based upon an exception taken to the refusal by the court to charge the following request, "that the burden of proof is upon the plaintiff to show that at the date of delivery of the policy and payment of the first premium the insured was in good health." What the court charged was:   "The plaintiff in this case does

accept the burden of proving to your satisfaction that Mr. Smith was, on the date of the issuance of the policy, in the same condition of health as described in the application blank, but in the application and in the declaration he says, 'the statements and answers to the above questions are complete and true to the best of my knowledge and belief,' so that when he said in the application, in answer to the question, '*Q*. Are you in good health?' '*A*. Good,' he declared what was true to the best of his knowledge and belief, and I charge you therefore that all you have to find in order to make this policy effective against the company is, that he answered truly to the best of his knowledge and belief that he was in good health. In other words, he need not necessarily have been in good health if he honestly believed he was in good health when this policy was issued and when he made the application and the declaration."

We are of opinion that the statement regarding condition of health when the application was signed being upon knowledge and belief, all the plaintiff was required to show was that the applicant, when he signed the application, and the policy was delivered to him, had reason to, and did, believe that he was in good health. It is not necessary in this case to consider which of the statements are to be deemed warranties and which not, within the fair meaning of the contract, based upon the *bona fide* opinion and belief of the applicant, as might be required where the applicant has unqualifiedly certified that all the statements are true, as in *Dimick* v. *Metropolitan Life Insurance Co.*, 40 *Vroom* 384, for in this case all of the statements were certified to be upon knowledge and belief, and it falls within that class of cases illustrated by *Anders* v. *Knights of Honor*, 22 *Id.* 175, in which Chief Justice Beasley said, regarding the certification of truth upon knowledge and belief: "It seems to the court that this accepted declaration by the assured that he has answered the questions to the best of his knowledge and belief, must be held to exclude the idea that he had undertaken to answer them in a more unqualified manner. If his statement was an engagement that his answers were absolutely true, no

reason appears for the presence of this subsequent statement that such answers were but relatively true. In fine, the several parts of this contract will not consist, unless upon a theory, that the assured warranted not the absolute truth of his answers, but only their truth to the extent of his knowledge."

·The cases which the plaintiff in error has cited on his brief are not applicable to a case where the condition of health at the time of the application and its remaining unchanged until the policy was issued is upon information and belief. In *Gallant* v. *Metropolitan Life Insurance Co.,* 167 *Mass.* 79, the contract was that no obligation was assumed by the company; unless at the time the policy was issued the insured was alive and in sound health, and it did not appear that the statements of the insured were, by the terms of the contract, limited to knowledge and belief.

So, also, in the case of *Barker* v. *Metropolitan Life Insurance Co.,* 188 *Mass.* 542, the statement of the applicant was "that I further declare, warrant and agree that the representations and answers made above are strictly correct and wholly true," which was a warranty that they were true, and not that the applicant believed they were true.

In *Packard* v. *Metropolitan Life Insurance Co.,* 72 *N. H.* 1, judgment was rested upon the same sort of a policy. And so examination of all the cases cited show that the condition of health was warranted unqualifiedly, and not upon knowledge and belief.

We are of opinion that the trial court correctly interpreted the legal effect of this contract, and that the question whether, to the knowledge and belief of the applicant, he was in good health was properly submitted to the jury. On this question there was conflicting testimony, and the verdict of the jury establishes the fact that the applicant, according to the best of his knowledge, believed he was in good health when he made the application and when the policy was issued.

The next point pressed on the argument rests upon the refusal of the court to direct a verdict for the defendant because the insured represented to the defendant that no application

for insurance on his life was pending in any other company at the time he applied for insurance in the defendant company, while the testimony was conclusive that between the application to the defendant company and the issuing of the policy, deceased had made an application to another company for life insurance, which was yet pending when the defendant's policy was delivered, although afterwards refused.

There is nothing in the contract which requires that at the time when the policy was delivered the condition that no application to another company was pending, should continue until the policy was issued, as in the case of the health of the insured, and such a covenant will not be implied to work a forfeiture of a life insurance policy. The only situation which the application in this case required to remain unchanged was the condition of the health of the applicant.

The trial court submitted to the jury for their determination the question whether the applicant, when he answered truthfully that no application was pending in any other insurance company, acted honestly or whether he signed the defendant's application intending to make an application to another company and concealed that fact from the defendant, and instructed the jury that if, "under all the testimony in this case, you find that when Mr. Smith gave that answer he did intend to make another application to another company, and after having made that application he did intend to withhold that from this company in fraud, then I charge you that it is just as though there had actually been another application pending at the time and he knew it; but it is a question of what was his mental attitude; was he honest when he made the statement or was he dishonest?"

This charge in no way injured the defendant, for the conditions that were to remain unchanged until the policy was delivered were limited to "while my health is in the same condition as described in this application."

The next point argued is that it was error to refuse a direction for the defendant because the insured in the application had falsely answered the following question: "*Q.* Have you, so far as you know, ever had any serious illness or disease?"

to which he answered, "No." This the defendant argues was conclusively shown to be false, because, in replying to a question put by the medical examiner of the defendant, the insured stated that he was last attended by a physician five years before for pneumonia, at which time he was sick in bed for two weeks, and then completely recovered, while at the trial it developed he had had three attacks of pneumonia, one twelve years before, another about five years before, lasting about four weeks, and the third three or four years prior to his death.

We think the trial court properly refused to direct a verdict on this ground, because, while in his application, the insured was not of opinion that he had had a serious illness, still in answer to the question put by the medical examiner representing the defendant company he stated the facts. Whether an illness is serious or not is a question of fact, and not of law, and to forfeit a policy by directing a verdict simply because the applicant upon a statement of facts made known to the company from which a serious illness might be inferred, was of opinion that the illness was not serious, could not be supported. The question, in our opinion, was one of fact and justified the refusal of the trial court to direct a verdict for the defendant.

The next point argued is that the court committed an error in submitting the question of fact to the jury, which he did in the following language: "Now, there again, gentlemen, you take into consideration the question of what Mr. Smith had in his mind. Did he regard the illness as serious? If he did, and he told the company he had no serious illness and he knew it at the time he signed this application, that worked a fraud upon the company. But even if he remembered he had pneumonia and he did not think it was a serious illness and that he spoke the truth as he saw it, then the company cannot escape on that defence."

The argument against this is that it requires the defendant to carry the burden of showing not only that the insured had suffered serious illness, but that he had not forgotten the fact. We do not think this a fair criticism, for knowledge

and intent can be established by proof of circumstances from which it may be inferred, and all the defendant was required to do was to show a condition which would charge the defendant with knowledge that his illness was a serious one. In this case the circumstances relating to this question were presented to the jury, and they were told that if the insured knew that the illness was a serious one, then his denial in his application that he had ever had a serious illness worked a fraud upon the defendant company.

When the company accepted this risk, they knew the precise extent of the illness of the applicant, which they now desire to have this court hold, as a matter of law, was a serious one. It did not then deem it sufficiently serious to prevent it from issuing the policy, and as forfeitures are not favored in the law, if, by any intendment, a ground can be found to defeat them, we are of opinion that the defendant company in accepting this risk with knowledge of the conditions which the insured interpreted not to be a serious illness, raises the presumption that the company itself did not consider that he had been seriously ill, and that this presumption remained until they had satisfied the jury that the insured knew, or ought to have known, that his illness had been serious.

It is next argued that the trial court improperly excluded testimony offered by the defendant relating to the reputation of the insured for intemperance. The insured, in his application, stated that he had never been intemperate in his habits, and, in his declaration to the medical examiner, that he had never used malt or spirituous liquors to excess.

The defendant produced several witnesses who testified to particular instances from which it was claimed that it might be inferred the insured was accustomed to use intoxicating liquors to excess, and that he was intemperate in such use. That he did use intoxicating liquors was not denied, but to what extent was a question of fact to be determined from the testimony, for there was testimony on the part of the plaintiff that while the insured drank intoxicants occasionally, the use was never intemperate. The witnesses on both sides had known the insured for many years, and the jury had before it

the facts regarding the conduct of the insured in the use of liquor, from which they could judge whether the use was intemperate or to excess.

The defendant then offered to prove the reputation of the insured in the community where he lived "for being an intemperate user of alcoholic beverages." This, and other questions of like tendency, were rejected, and the ruling is the subject of several assignments of error. We are of opinion that the questions were properly rejected. Reputation as proof of a fact that cannot otherwise be conveniently shown is permitted in certain cases as one of the exceptions to the rule forbidding hearsay testimony, an exception which courts are not inclined to extend.

The testimony in this case was offered not to affect credibility, but as substantive proof of a fact, viz., that the insured was addicted to the intemperate use of intoxicating liquor contrary to his statement that he was not. Evidence of general reputation is original and not hearsay, "so far as it is offered not to prove the fact reputed to be true, but merely the probability that through the reputation, rumor or other communication, a party has become aware of a certain fact if it existed" (1 *Greenl. Ev.*, § 101), but in order that an exception to the rule exist, there must be some kind of necessity for its recognition, the usual one being the difficulty of getting better evidence. Such a difficulty cannot be said to exist where the reputation called for depends upon provable facts, or where, as in this case, they are proved in denial of a statement pertinent to plaintiff's case. The issue here is, did the insured tell the truth when he said that while he used intoxicants he did so temperately?

To admit evidence of general reputation on this issue would result in allowing hearsay testimony to be given regarding a material question, the determination of which would settle the issue presented. The plaintiff in error refers to the case of *Neudeck* v. *Grand Lodge*, 61 *Mo. App. Rep.* 97, and if we could approve the reasoning, it would have some bearing on this case. In that case the applicant denied that he had

ever been addicted to the intemperate use of intoxicating liquors, or that he did use them either daily, or habitually.

The trial court refused proof of reputation, and the appellate court in reversing this ruling held that reputation of such character, standing alone, was not admissible, but taken in connection with proof of acts which tended to show that the insured was addicted to the intemperate use of liquors, it would possess some slight probative force and therefore become admissible. No cases are cited which support this view.

We are not persuaded that where proof of reputation, standing alone, is inadmissible, it becomes admissible whenever there is proof of facts from which a jury might infer a foundation for the alleged reputation. Proof of the acts of a party is the best evidence of the fact ultimately to be proved, viz., intemperance, and having that proof the necessity for resorting to a weaker grade does not exist, and the principal reason for making an exception to the hearsay rule is absent. After a careful examination of the case last cited we are not convinced that it expresses the true rule which should be applied to the case under review.

We are of opinion that reputation for intemperance is not admissible evidence to contradict a statement, made by an applicant for life insurance, that while he used intoxicating liquors he did so temperately, for it is not offered to affect credibility, but in denial of a fact, pertinent to the issue raised and not difficult to prove, if true, by the acts of the insured, which is the best evidence, and therefore find no error was committed on this branch of the case.

We have examined the other assignments of error and find in them nothing which required a reversal of this judgment, and it is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 14.

*For reversal*—None.