32 N.J. Super. 300 (1954)
108 A.2d 281
CONCETTA LOCICERO AND DIEGA LOCICERO, PLAINTIFFS-APPELLANTS,
v.
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, A CORPORATION OF THE STATE OF MASSACHUSETTS, ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1954.
Decided October 7, 1954.
*302 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Theodore J. LaBrecque argued the cause for plaintiffs-appellants (Mr. Vincent E. Hull, attorney).
Mr. Nicholas Conover English argued the cause for defendant-respondent (Messrs. McCarter, English & Studer, attorneys).
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
Plaintiffs appeal from a judgment of the Law Division of this court in dismissing their action for the recovery of damages on a life insurance policy issued by defendant on the life of Joseph Locicero, husband and father respectively of plaintiffs. The case was tried, under the pretrial order, by the court without a jury on the issues raised by defendant's equitable counterclaim and plaintiffs' answer to it. All questions pertaining to deliberate and conscious fraud, i.e., "legal fraud" were eliminated and the court dealt, therefore, with the law of equitable fraud.
Decedent, Joseph Locicero, applied for an insurance policy from defendant on March 1, 1951; the applicant was examined by defendant's doctor on March 9, 1951; the policy was delivered to the insured on April 1, 1951; and the insured died March 16, 1952.
Defendant contends that the insured gave it false and misleading answers to application questions 11(B) and (D) and 13 and also that the insured violated "Part A of the policy that `* * * the insurance applied for shall take *303 effect * * * only if I have not consulted or been treated by a physician or other practitioner since the date of completion of said Part B.'" With reference to number 11 of Part B of the application the questions and answers in issue are as follows:
"11. Have you ever had or been told that you had, or consulted or been treated by a physician or other practitioner for any of the following:

* * * * * * * *
B. Lung Disease, Asthma, Pleurisy, Blood Spitting, Persistent Cough, Bronchitis or Tuberculosis? No.

* * * * * * * *
D. Pain in the chest, shortness of breath, Coronary Artery Disease or Angina Pectoris? No."
With reference to number 13 of Part B the question and answer are as follows:
"Have you, during the past five years, consulted any physician or other practitioner, or been confined to or treated in any hospital, sanatorium, dispensary, clinic or similar institution not stated in answers to Questions 11 and 12? No." (Italics added.)
We feel that this appeal can be decided by reference to number 13 and therefore limit our opinion to that point.
Although the applicant answered "No" to question 13 with reference to having "consulted" doctors within the five-year period embraced by the question, the record shows that he consulted Dr. Nicholas F. Scielzo in 1945 and 1946 before the beginning of the five-year period, and also consulted with this doctor from October 1950 through March 1951; that the visits from October through March totalled eight to ten and were "At first rather evenly, weekly intervals, and after that sporadically until March"; that the insured's complaints were "The same complaints he had in 1945, pain in the low back and the left leg" and that the "Diagnosis was the same, left sciatica, possible herniated disc." The record also shows that he consulted Dr. Fred J. Crescente in February 1945, May 1945, June 1945, December 13, 17, 18, 20 and 21, 1945; November 14, 1946; April 7, 1947, and *304 after that date Dr. Crescente gave the insured ten or eleven diathermy treatments and discharged him on May 8, 1947.
Dr. Crescente stated that in February 1945 he treated the insured for an infection in the left nostril; in May 1945 for an enlarged gland in the left inguinal region, the groin; in December 1945 for pain that "radiated down the right thigh and leg simulating a sciatica condition," requiring codeine and salicylates as well as X-ray treatments; in November 1946 for a rash in the right groin resulting from a friction rub; and in April through May 1947 for bursitis.
Other testimony was admitted about which objection to its admissibility was raised. We need not consider that testimony for our determination of the appeal.
Appellants do not question the veracity of two doctors; concede that the answer to question 13 was in fact not true "if one merely reads the language and words used in the question and answer," but contend that number 13 did not call for an answer to mere words but encompassed in the answer the element of "materiality to the risk," citing Shapiro v. Metropolitan Life Ins. Co., 114 N.J. Eq. 378, 380 (E. & A. 1933):
"The proofs did not tend to establish the falsity of the representation that he had not been attended by a physician in the preceding period of five years. He had not been `attended' by a physician within the meaning of that term as employed in the policy."
Mr. Justice Heher in the Shapiro case pointed out that the insured went to his physician for treatment of a coughing affliction; that the doctor's diagnosis was asthmatic bronchitis; that the doctor did not tell the insured what the diagnosis was; considered the condition as trivial and merely advised the insured to stop smoking. The proof did not show that he prescribed medicine or other treatment. The insurance company's medical examiner observed the same condition and refused to classify the insured as a first-class risk because he was an "excessive smoker" and further noted with reference to the respiratory system that "Sounds louder over upper bronchial tubes; slight throat cough once in a while; wheezing due to smoking." The underwriter withheld approval *305 of the application and an examination by another physician was ordered. The court pointed out (p. 381):
"These examinations resulted, apparently, in the disclosure of the same symptoms found by the insured's physician, and a like diagnosis. There was, in these circumstances, no false representation by the insured. * * *
"The questions relating to the state of insured's health, and his affliction during the specified period with any of the named diseases, necessarily were directed to insured's knowledge only. They sought to probe the insured's mind, and if he answered truthfully to the full extent of his knowledge, there was, necessarily, no false representation. The questions called only for the facts within the insured's knowledge, and his bona fide belief and opinion. Even in the case of warranties, the rule adopted by this court is that, with respect to questions as to matters that the insurer must know are not within the personal knowledge of the applicant, and with respect to those that call, not for definite statements of fact, but for statements of belief or opinion, the letter of the contract is to be controlled by its spirit and purpose, and the answers will be deemed warranties only of the bona fide belief and opinion of the applicant. Henn v. Metropolitan Life Insurance Co., 67 N.J.L. 310; Dimick v. Metropolitan Life Insurance Co., 69 N.J.L. 384, 393; Gilroy v. Supreme Court, Independent Order of Foresters, 75 N.J.L. 584, 588; Anders v. Supreme Lodge, Knights of Honor, supra [51 N.J.L. 175]. It is essential only that the applicant, in making the statement that he was in good health, had reason to, and did, believe that that was the state of his health. Smith v. Prudential Insurance Co., 83 N.J.L. 719. As was said by Chief Justice Beasley, in Anders v. Supreme Lodge, Knights of Honor, supra, the insured did not warrant `the absolute truth of his answers, but only their truth to the extent of his knowledge.'" (Italics added.)
The insured died of a tumor of the media terminus. None of the doctors had been able to discover the insured's real illness and the insured certainly did not know. The insurance company had the same knowledge of the insured's condition as did the insured; had two medical examinations of the insured and could not have been misled by the insured's act in not advising it of his visit to the doctor. See Mr. Justice Heher's like comment on this case in Metropolitan Life Ins. Co. v. Tarnowski, 130 N.J. Eq. 1, 4 (E. & A. 1941).
Moreover, we feel that the important difference between that application and the one here involved is the difference *306 between "attend" and "consult." There is no doubt that "consult" meant going to a doctor for any reason whatsoever, whereas "attend" under Mr. Justice Heher's opinion, meant to prescribe or give treatment. We hold that "consult" is more comprehensive a word than "attend."
The visits to Doctors Scielzo and Crescente were certainly within the knowledge of the insured. The last set of visits to Dr. Scielzo was in October 1950 through March 1951; the application was made March 1, 1951 and the applicant was examined by the company's medical doctor on March 9, 1951 when insured's statements pertaining to the medical part of the application  Part B  were given to the doctor and insured's signature witnessed by the doctor. It is inconceivable that insured's answer to number 13 was anything but false in fact. We hold that the insured did not deal fairly with the defendant in his answer to number 13. This court said in Atlantic Casualty Ins. Co. v. Interstate Ins. Co., 28 N.J. Super. 81, 85 (App. Div. 1953):
"Broadly speaking, it has always been considered that policies of insurance are contracts of the utmost good faith, and the applicant therefor is bound to deal fairly with the insurer in the disclosure of facts material to the risk. 29 Am. Jur., Insurance, sec. 540, p. 436."
See also Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 316 (1928) and Brunjes v. Metropolitan Life Ins. Co., 91 N.J.L. 296, 298 (E. & A. 1917).
Number 13 certainly was material to the risk. In Duff v. Prudential Ins. Co., 90 N.J.L. 646, 648 (E. & A. 1917), the court said:
"The fact that the company asks the question shows it is material * * *."
In Urback v. Metropolitan Life Ins. Co., 127 N.J.L. 585, 587 (E. & A. 1942), we find the following:
"In Metropolitan Life Insurance Co. v. McTague, 49 N.J.L. 587, a Supreme Court case, the application for revival of a lapsed policy which by the customary language was made part of the new policy, *307 warranted that the insured had not consulted or been prescribed for by a physician. In fact, it appeared that a physician had prescribed for `a cold.' Mr. Justice Magie said (at p. 592), `the fact found contradicted this averment, whether the consultation and prescription related to a real disease or an apprehension of disease. Indeed, so material does such a representation seem to be to the contract proposed by the application that, in my judgment, if made falsely and knowingly, it would avoid the contract.'
"We consider that as a working rule, inquiries propounded in the application form, and the truthfulness and completeness of answers thereto touching the physical condition and pathological history of the applicant, are material to the risk as a matter of law, and that materiality is not the subject of findings of fact by a jury."
Had the defendant known of the numerous visits to Dr. Scielzo  as well as to Dr. Crescente  it would undoubtedly have checked with them and even made additional and more medical examinations of its own. It would then have been able to decide for itself whether it would take on the risk and, if so, under what classification. The evil in the answer to 13 is that it deprived defendant of the opportunity of making other investigations. 63 A.L.R. 846; California-Western States Life Ins. Co. v. Feinstein, 15 Cal.2d 413, 101 P.2d 696, 131 A.L.R. 617. Proper expert testimony was received, the effect of which was that the defendant's judgment would have been influenced by information stemming from a correct answer to 13.
Plaintiffs additionally contend that, even if there is found "equitable fraud," the defendant accepted payments of premiums on the policy after the delivery date with knowledge of the circumstances and defendant is thereby prevented in obtaining rescission, i.e., on the doctrines of waiver and estoppel.
Plaintiffs produced as a witness Carmen Locicero, brother of the insured and a special agent of the defendant. He had processed the application. He testified that he first learned that the insured had cancer on May 7, 1951 after delivery of the policy; that about a week later and on three other occasions he discussed the insured's illness with a general agent of the defendant and that thereafter the defendant received "a quarterly payment of $49.90 on October 15, 1951; *308 a monthly payment of $16.80 on January 28, 1952; and monthly payment of $16.80 on February 28, 1952."
Analyzing the record testimony on this point, it will be noted that knowledge of insured's cancer was not known before May 7, 1951.
"Q. Did you come to learn that your brother had cancer? A. Yes, I came to learn that.
Q. On what date? A. On May 7, 1951.
Q. Was that the first time that you knew about it? A. Yes, sir."
Assuming it to be true that the first knowledge of cancer was on May 7, 1951 and also assuming that on May 7, 1951 the defendant believed the insured had truthfully answered numbers 11(B) and (D) and 13, what grounds would defendant have to rescind? None.
In 67 Corpus Juris, Waiver, sec. 1, pp. 289-291, we find the following:
"`Waiver' has been defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed; the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefit; or such conduct as warrants an inference of the relinquishment of such right; or the intentional doing of an act inconsistent with claiming it. Thus, a `waiver' occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it; a `waiver' takes place where one dispenses with the performance of something which he has a right to exact."
This quotation is incorporated with approval in Long v. Board of Chosen Freeholders, Hudson County, 10 N.J. 380, 386 (1952), and McCue v. Silcox, 122 N.J.L. 12, 13-14 (E. & A. 1939). We agree with defendant that at the time it accepted the above payments, there is nothing to suggest any knowledge on the part of defendant of any grounds under 11(B) and (D) and 13 on which it could have sought rescission of the policy.
*309 There is, also, before us the question as to whether notice to the general agent was sufficient notice to the defendant to create a waiver. The policy provides:
"No person except the President, a Vice President, the Secretary, or the Assistant Secretary, is authorized to waive, alter, modify or change any of the conditions or provisions of this policy, including this provision, or of any endorsement hereon, or to waive any forfeiture hereof, or to extend credit or the time for the payment of any premium or any moneys due the Company."
In Schneider v. New Amsterdam Cas. Co., 22 N.J. Super. 238, 243 (App. Div. 1952) this court said:
"In the absence of a statute to the contrary, an insurance company has the right to impose whatever conditions it chooses on its obligations, not inconsistent with public policy, and the courts may neither add thereto nor detract therefrom. Exceptions, exclusions or reservations in an insurance policy will be construed in accordance with their language and the usual rules governing the construction of insurance contracts."
Obviously the general agent is not one of the persons named in the policy itself as having authority "to waive any forfeiture" thereof. Hence, any knowledge on the part of the general agent could not constitute a basis of waiver or forfeiture of the policy or the waiver of any defenses or grounds for rescission. Metropolitan Life Insurance Co. v. Coddington, 131 N.J. Eq. 430, 433 (Ch. 1942); Shyowitz v. Union Indemnity Co., 104 N.J.L. 339, 340 (E. & A. 1928); Dimick v. Metropolitan Life Insurance Co., 69 N.J.L. 384, 395 (E. & A. 1903).
Judgment is affirmed but without costs.