719 A.2d 683 (1998)
316 N.J. Super. 63
PROGRESSIVE CASUALTY INSURANCE COMPANY, Plaintiff-Respondent,
v.
Thaer K. HANNA and or Thaer Saliba, Defendant-Appellant, and
Robert Mikolski and Patricia Mikolski, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1998.
Decided November 6, 1998.
M. Fred Gernand, New Brunswick, for defendant-appellant.
*684 Thomas J. Decker, Millburn, for plaintiff-respondent (Schechner & Decker, attorneys; Mr. Decker, on the brief).
Before Judges PRESSLER, BROCHIN and KLEINER.
The opinion of the court was delivered by KLEINER, J.A.D.
Defendant Thaer K. Hanna and/or Thaer Saliba ("Hanna") appeals from the grant of summary judgment to plaintiff, Progressive Casualty Insurance Company ("Progressive") in its declaratory judgment action which sought to void ab initio a commercial comprehensive liability insurance policy, wherein Hanna was the named insured.[1]
The underlying facts raise an issue of first impression. May an insurer void ab initio an insurance policy for which the applicant provides full and true answers yet omits facts about which no inquiry is made when the omitted facts are material to the insurer's determination whether to accept the insurance risk? Stated alternatively, does New Jersey recognize the concept of "concealment" which has been defined as "the designed and intentional withholding of any fact material to the risk which the insured in honesty and good faith ought to communicate to the insurer"? 7 Am.Jur.2d § 65; 43 Am.Jur.2d § 1003. Although the motion judge did not specifically discuss the concept of "concealment," he implicitly implied it when he granted summary judgment to plaintiff. We disagree and reverse. We conclude that an insurer may not rescind ab initio a policy of comprehensive liability insurance on the basis of an applicant's failure to disclose a material fact, when the insurer fails to ask the insurance applicant questions designed to elicit a material fact.

I
Hanna resided with his family in Uniondale, Long Island, as a teenager. When he turned sixteen, Hanna, desirous of entering New York bars, purchased from a private citizen a bogus New York driver's license bearing his photograph and the name "Thaer Saliba,"[2] and designating his age as twenty-one. The license was not issued by the New York Division of Motor Vehicles.
Hanna stated in his pre-trial discovery deposition that in 1980 or 1981, after moving to New Jersey, he applied for a New Jersey driver's license, using the bogus New York driver's license to establish his entitlement.[3] A New Jersey driver's license was issued to Hanna under the name "Thaer Saliba." The Division of Motor Vehicles suspended that license in 1982 or 1983 because of his numerous driving infractions and his subsequent failure to pay motor vehicle fines and motor vehicle surcharges. The "Saliba" license was reinstated, but in 1984, it was suspended again.[4] Hanna testified that between 1984 and 1992 he operated a motor vehicle without a driver's license.[5]
*685 On an undetermined date in 1992, Hanna, using his real name, applied for and was issued a New Jersey driver's license bearing number H0447 73572 08632 and the name "Thaer Hanna."[6]

II
On October 24, 1994, Hanna completed an application for comprehensive liability insurance at the offices of Hanna's insurance broker, the AAAA Insurance Agency. The broker submitted Hanna's application to the New Jersey Commercial Automobile Insurance Plan ("CAIP"), a program which provides coverage for owners of commercial vehicles unable to procure insurance through the voluntary market. CAIP operates pursuant to N.J.A.C. 17:29D-1 and N.J.A.C. 11:3-1.1 et seq.
Section 3 of the rules promulgated by CAIP provides in pertinent part:
No applicant shall be qualified if the principal operator of the automobile to be insured does not hold a valid driver's license which is valid in this state.
Section 9 of the CAIP rules provides in pertinent part:
A prospective insured ... shall be considered for assignment upon making application in good faith to the Plan. A prospective insured shall be considered in good faith if he reports all information of a material nature, and does not willfully make incorrect or misleading statements, in the prescribed application form, or does not within any of the prohibitions or exclusions listed below. A prospective insured shall not be entitled to automobile insurance nor shall any Service Carrier be required to afford insurance if any person who usually drives the motor vehicle does not hold or is not eligible to obtain an operator's license....
In his application, Hanna identified himself as both "Applicant" and "Registered Owner," and listed his correct address and occupation. Question 3 in the application asked for "Operator Information, Names of Owners, Employees and Relatives who will operate owned autos." Hanna provided his name "Thaer Hanna"; his date of birth"8/5/63"; and his "Driver's License No. & State" as "HO447 73572 08632," the number on his "Hanna" license. The vehicle for which insurance was requested was a 1990 Ford Eco-150 Van. Hanna requested combined single limit insurance coverage of $35,000.
Above Hanna's signature was a preprinted affirmation, providing in pertinent part,
I declare and certify that: ... (2) To the best of my knowledge and belief that all statements contained in this application are ture [sic] and that these statements are offered as an inducement to the servicing carrier to issue the policy for which I am applying. (3) I realize that any misleading information or failure to disclose required information will be considered lack of good faith on my part and may void the application or cause cancellation of my coverage.
Hanna's insurance application was submitted to CAIP, who assigned it to Progressive as a servicing carrier. A policy of insurance was thereafter issued and was effective on May 31, 1995, when Hanna was involved in an automobile accident injuring Mikolski.[7] An ensuing police investigation[8] revealed that Hanna had previously applied for and was issued a New Jersey driver's license under the name "Thaer Saliba," and that Hanna, without disclosing the revocation of the "Saliba" license, thereafter applied for and received a New Jersey driver's license under *686 the name "Thaer Hanna." On his application to the Division of Motor Vehicles for the "Hanna" license, he responded "no" to the question: "Is your driving privilege now suspended in any state?" In his deposition, Hanna was asked: "Did you ever state verbally or in writing when you applied for your license under the name Thaer Hanna that you had previously possessed a license issued to Thaer Saliba which was suspended?" Hanna responded, "No."

III
It is apparent from the record that Progressive initially provided Hanna with a defense to an action in the Law Division commenced by Mikolski. When it learned of Hanna's driver's license status, it filed a separate declaratory judgment action to declare its policy void ab initio. In granting summary judgment, the motion judge concluded:
It is undisputed that defendant Hanna possessed a suspended driver's license. Defendant Hanna argues that the insurance agent did not inquire as to whether his driver's license was suspended. Further, this defendant argues that he possessed a valid New Jersey driver's license and this license was not suspended at the time he applied for the liability insurance.
It is irrelevant, however, that Hanna's New Jersey-issued driver's license was not suspended at the time of the accident. The central issue, which Hanna fails to state, is that the driver's license issued in the name of "Thaer Saliba" was suspended because of several driving infractions. These included citations for driving under the influence of liquor/drugs and speeding. In fact, defendant Hanna had received three previous citations for driving during his suspension period.
Clearly, defendant Hanna knew that his driver's license and, thus, his driving privileges were suspended. In presenting his second driver's license to the plaintiff, defendant Hanna willfully misrepresented the fact that he was a valid New Jersey driver and as such the policy should be declared void ab initio.

Based on Fisher v. New Jersey Auto. Full Ins., 224 N.J.Super. 552, 558, 540 A.2d 1344 (App.Div.1988), and Marotta v. NJAFIUA, 280 N.J.Super. 525, 532, 656 A.2d 20 (App.Div.1995), the judge found that Progressive is obligated to the injured third parties the Mikolskis) to the extent of Hanna's mandatory insurance liability, or $15,000, and that Progressive is entitled to seek that amount in indemnity from Hanna. The judge added: "Any claim in excess of the $15,000 is subject to the defense that the insurance policy was declared void ab initio." Hanna's subsequent motion for reconsideration was denied.
On appeal, Hanna argues that the motion judge improperly concluded that his insurance policy with Progressive was void ab initio because "it is clear from a review of the application and from defendant's certification and exhibits ... that [Hanna] answered all the questions on the application for insurance completely and truthfully." Hanna contends that when he applied for insurance with CAIP he was unaware of the CAIP rules and "was never asked if his driver's license was suspended" or if he was ever known by a name other than "Thaer Hanna." He also contends that his New Jersey driver's license under the name "Thaer Hanna" is indeed valid, regardless of the suspension of his driving privileges under the name "Thaer Saliba," and "that a person suspended is not necessarily an ineligible applicant."
We concede that the motion judge's conclusion on first blush correctly concluded that Hanna should not benefit from his fraudulent misrepresentation nor should Progressive be required to insure a risk it would ordinarily have rejected but for the fraudulent misrepresentation. Although not cited, it is clear that the judge was influenced by a long-recognized concept that:
Broadly speaking, it has always been considered that policies of insurance are contracts of the utmost good faith, and the applicant therefore is bound to deal fairly with the disclosure of facts material to the risk.
[Locicero v. John Hancock Mutual Life Ins. Co., 32 N.J.Super. 300, 306, 108 A.2d 281 (App.Div.1954) (citing Atlantic Casualty Ins. Co. v. Interstate Ins. Co., *687 28 N.J.Super. 81, 85, 100 A.2d 192 (App.Div.1953)).]
The Supreme Court has fully recognized this obligation and has repeatedly stated in other contexts that "the prospective insured must not misrepresent or conceal information concerning risks entailed in coverage under an insurance policy." Sears Mortgage Corp. v. Rose, 134 N.J. 326, 347, 634 A.2d 74 (1993) (citing Massachusetts Mut. v. Manzo, 122 N.J. 104, 584 A.2d 190 (1991); Longobardi v. Chubb Ins. Co., 121 N.J. 530, 582 A.2d 1257 (1990); Appelman, 12A Insurance and Practice § 7271, at 302 (1981)). Thus the Court has heretofore recognized the insured's obligation when asked a specific question in the insurance application, to respond truthfully. That is not the precise issue here, where we are confronted with a truthful answer to questions asked on an application that does not elicit material facts to guide the prospective insurer's decision to accept or reject the prospective risk.[9]
Although the obligation of a prospective insured to truthfully answer questions posed by a prospective insurer is well-recognized, we have had occasion to deviate from this standard where a prospective insurer fails to ask an insurance applicant pertinent questions material to its decision to accept the prospective risk.
In Catton v. Ins. Underwriting Ass'n., 242 N.J.Super. 5, 576 A.2d 1 (App.Div.1990), we were called upon to determine whether an insurer could void ab initio an automobile liability policy where the applicant failed to disclose that the automobile which he sought to insure was not registered in New Jersey, a prerequisite to being a "qualified applicant" within the definitional purview of N.J.S.A. 17:30E-1 et seq., the New Jersey Automobile Full Insurance Availability Act (commonly referred to as "JUA"), and specifically N.J.S.A. 17:30E-3(m). The issue in Catton was presented on a motion pursuant to stipulated facts. Id. at 8, 576 A.2d 1. The issue presented was whether the insurance company may rescind, rather than cancel, an insurance policy where the insured was not a qualified applicant. The trial court found no misrepresentation on the application as to the vehicle's registration. The parties stipulated that the vehicle was not registered in New Jersey. Ibid.
We noted:
[I]t is undisputed for the purpose of this opinion that any and all questions asked of plaintiffs when applying for the insurance policy were answered honestly. Moreover, neither the JUA, State Farm nor JUA's approved broker, R.S.A. Brokerage, ever inquired into where the subject automobile was registered. In addition, the policy itself does not make any reference to the statutory definition of qualified applicant.

[Id. at 9, 576 A.2d 1 (footnote omitted).]
Our opinion in Catton reviewed the legislative history of N.J.S.A. 17:30E-1 et seq., and we concluded:
Clearly, the legislative statement and the statutory provision when read together place the burden on the JUA, through its servicing carriers, to ascertain whether the applicant meets the qualifying provisions of the statute. Obviously, this can only be done through the application process. The servicing carrier, State Farm, failed to make the necessary inquiry in this case.

[Id. at 10, 576 A.2d 1.]
Here, the application for insurance simply asked Hanna for his name, address, age, and driver's license number. The application did not ask if the driver's license was valid or validly obtained. Additionally, it failed to ask whether the applicant had ever been licensed in this state or any other state under another name, or whether Hanna's license issued under any name had ever been suspended or revoked. Any or all of these questions, if answered honestly, would have revealed facts material to Progressive in its determination whether to accept the insurance risk. Moreover, had Hanna answered falsely, Progressive would have been entitled, based on defendant's affirmation, supra, to cancel the coverage.[10] As noted in Harr v. *688 Allstate Ins. Co., 54 N.J. 287, 255 A.2d 208 (1969), an insurer must obtain
through its representatives all information pertinent to the risk and the desired coverage before the contract is issued; and that it is likewise its obligation to make policy provisions, especially those related to coverage, exclusions and vital conditions, plain, clear and prominent to the laymen.

[Id. at 304, 255 A.2d 208].
Although Hanna failed to truthfully answer questions posed to him by the New Jersey Division of Motor Vehicles when he obtained his current license, Progressive does not cite any authority that declares a license issued pursuant to a dishonest application for licensure as void per se. The question as to the validity or invalidity of Hanna's current license issued to him under his legal name is not specifically before us, however, we note that N.J.S.A. 39:3-37 deems defendant's license voidable and not void.[11]
We appreciate Progressive's position, that Hanna obtained insurance coverage by failing to disclose a material fact which surely would have affected Progressive's decision whether to accept the insurance risk. However, we conclude that Progressive incurred the insurance risk because it neglected to ask the pertinent questions which, if answered truthfully, would have induced it not to accept the risk or, if answered falsely, would have relieved it of its obligation to provide a defense and indemnity.[12] As we have noted, Progressive never asked Hanna if the New Jersey driver's license issued to him under his legal name was a valid license. It merely asked him for the number of his driver's license. On these facts, the motion judge clearly erred when he concluded: "In presenting his second driver's license to the plaintiff, defendant Hanna willfully misrepresented the fact that he was a valid New Jersey driver and as such the policy should be declared void ab initio " (emphasis added). Defendant simply made no representation as to the validity or invalidity of his driver's license; he was not questioned about the history of his licensure.
Hanna clearly omitted material facts as to the status of his license, but did not misrepresent the fact that he was a valid New Jersey driver. Progressive's failure to gather all material information pertinent to its decision to accept or reject the insurance risk should not benefit plaintiff.
This view seems to be recognized in other jurisdictions. As noted in 43 Am Jur.2d § 1008:
If the insurer propounds questions to the applicant and he makes full and true *689 answers, the applicant is not answerable for an omission to mention the existence of other facts about which no inquiry is made of him, although they may turn out to be material for the insurer to know in taking the risk.[13]
See National Aviation Underwriters, Inc. v. Fischer, 386 F.2d 582 (8th Cir.1967) ("absent fraud an applicant's failure to disclose facts about which no questions were asked will not avoid the policy"); H.B. Singer, Inc. v. Mission National Ins. Co., 223 A.D.2d 372, 636 N.Y.S.2d 316 (App.Div.1996) (assuming materiality, nondisclosure of a fact which was not asked does not ordinarily void an insurance policy absent intent to defraud); Mulvihill v. American Annuity Life Ins. Co., 121 Mich.App. 192, 328 N.W.2d 402 (Mich.Ct.App.1983) (holding insurance applicant is under no obligation to disclose health information about the insured because the insurance company did not request the information).
Our conclusion fully comports with the general principles that insurance policies are contracts of adhesion, construed favorably to the insured, and all ambiguities are resolved in favor of coverage. Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 87-88, 698 A.2d 9 (1997) (citing Sparks v. St. Paul Ins. Co., 100 N.J. 325, 334-39, 495 A.2d 406 (1985)). This seems particularly so where, as here, the rights of innocent parties who have sustained injuries will be affected by recision ab initio.
Reversed.
NOTES
[1] Plaintiff's complaint also sought: (a) to disclaim any responsibility to defend Hanna or provide indemnity for a personal injury claim then pending in the Law Division, Somerset County, wherein Robert J. Mikolski and Patricia Mikolski (collectively "Mikolski"), suing per quod, are plaintiffs and Hanna is defendant, and also to limit its indemnity responsibility for any sum awarded Mikolski in excess of $15,000 per person or $30,000 per accident; and (b) to require Hanna to "reimburse Progressive for any amount paid to [Mikolski] ... in settlement or as a result of a jury verdict within 30 days of any such payment."
[2] At his deposition, Hanna indicated that the name "Saliba" was a family name which was used on his initial immigration papers and on his green card when he moved to the United States with his family.
[3] Hanna specifically denied being required to take a driving test in New Jersey and could not recall if he took a written pre-licensure test.
[4] Hanna testified that, although he had resolved all outstanding summonses issued to him under the "Saliba" license, that as of the date of his deposition, he was still paying Division of Motor Vehicle surcharges levied in conjunction with numerous motor vehicle violations attributable to his use of the "Saliba" license.
[5] The record on appeal would contradict Hanna's assertion. A certified abstract of the driver's license record of Thaer Saliba indicates that Hanna, using the "Saliba" license, was issued a summons on July 26, 1990 for violating N.J.S.A. 39:3-40, for operating a motor vehicle with a suspended driver's license and on March 3, 1990 for a violation of N.J.S.A. 39:4-98, for speeding fifty-four miles per hour in a forty miles per hour zone. The abstract also lists a multitude of other driving violations between October 17, 1981 and June 24, 1996.
[6] Although Hanna testified that he applied for a New Jersey driver's license in October 1992, a certified New Jersey Division of Motor Vehicle's driver's abstract reveals that a summons for careless driving, N.J.S.A. 39:4-97, and a summons described as "unlicensed driver" and bearing a reference to N.J.S.A. 39:3-10, were issued to Hanna on February 23, 1992. Another careless driving summons was issued to Hanna on October 14, 1992.
[7] Although Mikolski entered an appearance in the declaratory judgment action, he has not participated in this appeal.
[8] The record on appeal does not reflect the reason for this police investigation.
[9] This case also does not involve, as in Longobardi, a material misrepresentation made by an insured in the context of a post-loss investigation. 121 N.J. at 543, 582 A.2d 1257.
[10] We need not reach the issue whether plaintiff would have been entitled to rescission of the policy of insurance, rather than cancellation. Rescission voids the policy ab initio; cancellation voids the policy prospectively but would not affect any claim asserted by an innocent third party prior to cancellation. See Marotta v. NJAFIUA, 280 N.J.Super. 525, 656 A.2d 20 (App.Div.1995).

In Catton, we distinguished our decision from the facts presented in Bidnick v. Hanover Ins. Co., 230 N.J.Super. 111, 552 A.2d 1023 (App.Div.1989), where we concluded that an insurer could rescind an automobile insurance policy and rebate the insured's premiums after it discovered the insured had falsely represented he was a New Jersey resident. Catton, 242 N.J.Super. at 11, 576 A.2d 1 (citing Bidnick, 230 N.J.Super. at 115, 552 A.2d 1023). The distinction is obvious. In Bidnick, the application answered a material question falsely. In Catton, the applicant was not asked any question as to the place where the automobile was registered.
[11] N.J.S.A. 39:3-37 states that:

A person who gives a fictitious name or address or makes any other intentional misstatement of a material fact in his application for registration of a motor vehicle or driver's license or in a preliminary application, examination or proceeding, or a person who knowingly sells, loans or gives an identification document to another person for the purpose of aiding that person to obtain a driver's license or registration certificate for which that person is not qualified, shall be subject to a fine of not less than $200.00 or more than $500.00, or imprisonment for not more than 6 months or both, at the discretion of the court. The director shall, upon proper evidence not limited to a conviction, revoke the registration of the motor vehicle or driver's license of a person who violates this section for a period of not less than six months or more than 2 years.
[12] We are particularly mindful that CAIP was designed to provide coverage for owners of commercial vehicles unable to procure insurance through the voluntary market. CAIP is analogous to the JUA. Applicants to either CAIP or the JUA should be asked pertinent questions designed to elicit material facts which affect a decision to accept or reject a proposed risk.
[13] A related annotation on "fire insurance," 4 A.L.R. 5th 117, § 6, states:

[I]n the absence of an inquiry by the insurer, or where it was not stated by the court whether such question was asked, it was not a defense to an insurance claim that the insured did not disclose that his property had been affected by prior fires, since the insured had no independent duty to disclose such facts, and since the materiality of the nondisclosure was not proven.