**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1448-19

AFFILIATED FM INSURANCE,
CO., a/s/o BEAUVAIS CARPETS,
INC., and BEAUVAIS CARPETS,
INC.,

      Plaintiffs,

v.

ROTHSCHILD REALTY I, L.P.,
and UNIVERSAL CARPET
DESIGN, INC.,

      Defendant,

and

ROTHSCHILD REALTY I, L.P.,

      Defendant/Third Party
      Plaintiff-Appellant,

v.

HARLEYSVILLE INSURANCE
COMPANY,

      Third Party Defendant
      -Respondent.

Argued July 13, 2021 – Decided August 6, 2021

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4339-17.

Patrick D. Heller argued the cause for appellant (Law Offices of Terkowitz & Hermesmann, attorneys; Patrick D. Heller, on the briefs).

Tracey K. Wishert argued the cause for respondent (Riker Danzig Scherer Hyland & Perretti LLP, attorneys; Tracey K. Wishert, of counsel and on the brief; Theodore A. Mottola, on the brief).

PER CURIAM

Defendant/third-party plaintiff Rothschild Realty I, L.P. (Rothschild) owned a warehouse which it leased to defendant Universal Carpet Design, Inc. (Universal). The lease required Universal to obtain general liability insurance for the property and to name Rothschild as an additional insured. Although Universal obtained commercial property coverage and commercial general liability coverage from third-party defendant Harleysville Insurance Company, the insurance application did not request coverage for Rothschild as an additional insured.

A-1448-19

After the warehouse roof collapsed in February 2014 and damaged merchandise owned by Beauvais Carpets, Inc., Beauvais' insurance carrier, Affiliated FM Insurance Company (Affiliated), compensated Beauvais for the damaged carpets and subsequently brought a subrogation action against Rothschild and Universal.[1]  Rothschild sought coverage for the claim from Harleysville.  Because Rothschild was not named as an additional insured on the policy, Harleysville denied coverage.

Thereafter, Rothschild filed a third-party claim against Harleysville.  The trial court granted Harleysville summary judgment, finding Rothschild was not named as an insured under the policy and rejecting Rothschild's request for reformation.  We affirm.

As stated, the lease between Rothschild and Universal required Universal to obtain insurance coverage naming Rothschild as an additional insured.  In 2004, Universal tasked the Walsdorf Agency, Inc. to obtain the required insurance.  Walsdorf prepared a commercial insurance application, listing "Universal Carpet" as the applicant and giving the warehouse's address in North Bergen, New Jersey as the premises to be insured.  The application was signed

---

[1]  Universal did not answer the complaint.  Default judgment was subsequently entered against it.

A-1448-19

by Edward J. Brennan, a 50% owner of Universal and, as its office manager, the person responsible for the procurement of insurance.

Under the subsection entitled "Additional Interest/Certificate Recipient," the application listed "Ed J Drennan" with an address in Sparkhill, NY as an "Additional Insured . . . ."  Drennan is described on the application as the "Building Owner . . . ."

Walsdorf sent the insurance application to the Heffner Agency, Inc., (Heffner) which procured property and general liability insurance coverage for the leased warehouse from Harleysville.  Roger Currier, the Harleysville underwriter who reviewed and approved Universal's application, testified that according to the application, the owner of the building was Ed Drennan. Therefore, he included "an additional insured for a landlord" endorsement on the policy.  Currier stated it was "common for people to own buildings under one entity and own a business under another entity and rent them as it appears to have been the case in this situation."  Currier believed that "Ed Drennan personally owned the building but ran a carpet company called Universal Carpet . . . ."

Harleysville charged Universal a $50 minimal premium for designating Drennan as an additional insured.  Currier explained that the premium for the

additional coverage would have been higher if a different person or entity unaffiliated with Universal was the owner of the building.

The insurance policy issued by Harleysville to Universal included commercial property coverage and commercial general liability coverage. It was renewed every year for ten years without any changes regarding the additional insured. The last policy period was December 2, 2013 to December 2, 2014. Like the previous policies before it, the policy insured the warehouse located in North Bergen and the additional insured was listed as Ed J Drennan.

During his 2019 deposition, Drennan testified that he never owned the warehouse, and never told Walsdorf that he owned the warehouse. Although Drennan stated he reviewed the yearly policies for the amount charged and the "general coverage", he did not review them in totality. Drennan testified that the first time he observed the "building owner" designation on the insurance policy was shortly before his deposition.

After Rothschild filed a third-party complaint against Harleysville seeking insurance coverage under the Universal liability policy, Harleysville denied it had a duty to defend or indemnify Rothschild. Thereafter, Rothschild and Affiliated settled the underlying property damage claim for $75,000.

A-1448-19

Harleysville and Rothschild each moved for summary judgment on the third-party complaint. Harleysville asserted the clear and unambiguous terms of the policy do not provide coverage for Rothschild as an insured or an additional insured. Rothschild sought to reform the policy to include it as an additional insured under a theory of mutual mistake – that Universal and Harleysville meant to insure the warehouse owner – Rothschild – but instead mistakenly listed Drennan.

Alternatively, Rothschild contended the unilateral mistake coupled with Harleysville's inequitable conduct required reformation of the policy. Rothschild referred to a Certificate of Insurance found in Heffner's file during discovery. The certificate, issued by Walsdorf on October 29, 2013, lists Rothschild as a certificate holder and states that "Rothschild Realty is included as additional insured/landlord as respects [the warehouse premises]."

The certificate was not provided to Harleysville nor was it found in its records. Nevertheless, Rothschild asserted the certificate notified Heffner of a potential issue regarding the ownership of the warehouse and that Heffner's knowledge of Rothschild as the possible owner of the warehouse was imputed to Harleysville as its agent. Therefore, Harleysville should have investigated that fact and corrected the policy.

6

On November 14, 2019, the trial court issued a written decision and accompanying orders granting summary judgment to Harleysville and denying Rothschild's motion. In addressing Rothschild's argument that the listing of Drennan as the building owner was a mutual mistake requiring reformation of the policy, the court reasoned:

> [T]he facts do not indicate an intent to insure anyone other than Drennan, including Rothschild, the owner. Harleysville' s underwriter testified that he charged the minimum allowable premium for the CG 2011 endorsement naming Drennan because he understood that Drennan was both the principal of Universal and the landlord for the premises where Universal maintained its operations. Consequently, naming Drennan as an additional insured did not increase the overall risk . . . . Currier further testified that if requested to insure an independent landlord, he would have charged a different premium to reflect it. Under Harleysville's premium rating guidelines, he would have been required to charge more . . . . Instead, Currier charged the minimum premium of $50 to reflect the lesser risk created in a situation where the same person has a financial interest in both the safe operation of the tenant business and the structure in which the business operates . . . .
>
> Although Drennan ultimately did not require the insurance as an owner because he did not own or manage the warehouse, Rothschild has nevertheless failed to meet its high burden of proving by clear and convincing evidence that both parties intended to insure Drennan <u>as the owner</u>. Instead, the facts indicate the intent of Harleysville to insure Universal and Drennan <u>as listed in the application</u>. If Harleysville intended to

7

A-1448-19

insure Rothschild, it would have charged a higher premium, as it would have been required to do pursuant to a higher risk . . . . Therefore, the [c]ourt finds that Rothschild has not met the elements of reformation by mutual mistake by clear and convincing evidence.

The court also rejected Rothschild's secondary argument, stating:

Rothschild relies upon agency principles and its expert in claiming Universal's conduct was unconscionable. Specifically, it contends that Heffner, as Harleysville's agent, took possession of a document demonstrating that Rothschild was the true owner of the property. This document, a Certificate of Insurance issued by Walsdorf, identifies Rothschild as the 'insured/landlord.'

Rothschild's expert opines that Harleysville should have investigated this fact and immediately sought clarification. Currier admitted in his deposition that if he was aware, he would have investigated . . . . Therefore, Rothschild claims, the knowledge of Heffner as Harleysville's agent is imputed to the principal, Harleysville. See NCP Litig. Tr. v. KPMG LLP, 187 N.J. 353, 366 (2006).

Although Rothschild alleges a duty on behalf of Universal to ensure the applications contained the correct information and were properly issued in accordance with the insured's wishes, Rothschild has failed to demonstrate unconscionable conduct even if Universal's conduct failed to meet the alleged duty.

. . . .

Harleysville issued the policy precisely as Universal requested in its application and then the policy was renewed with the same terms and conditions for

8

approximately the following decade . . . . Universal and/or Rothschild did not assert any alleged errors in the policy. To the extent that Rothschild expected or intended to be insured, there is no evidence it ever reviewed or requested a copy of the Universal policy.

Rothschild submits that Universal's failure to read the entire policy does not bar Rothschild's suit. The [c]ourt does not find that it bars the suit. Instead, there is insufficient evidence that Harleysville acted unconscionably in its failure to name a party who raised no concerns about the terms of the policy.

Therefore, although Rothschild submits that Harleysville should have investigated the Certificate of Insurance issued by Walsdorf, there is insufficient evidence to demonstrate any 'unconscionable conduct' to warrant reformation due to unilateral mistake.

We review the grant of summary judgment de novo, applying the same legal standard as the trial court. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (citation omitted). Therefore, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if

9

any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Rep. & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citations omitted). We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

On appeal, Rothschild renews its argument, contending "the insurance contract should be reformed to reflect the parties' intent to insure the actual owner of the building, Rothschild." It further states that "the parties made a mutual mistake, they both believed [they] were insuring the warehouse owner."

"Generally, when interpreting an insurance policy, we give the policy's words their plain, ordinary meaning." Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 607-08 (2011) (citing Nav-Its, Inc. v. Selective Ins. Co., 183 N.J. 110, 118 (2005)). The court will enforce policy terms as written and "cannot write for the insured a better policy of insurance than the one purchased." Memorial Properties, LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012) (internal quotation marks and citations omitted).

A-1448-19

However, courts will reform a contract in the context of mutual mistake. Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 608 (1989). Finding a mutual mistake requires that: (1) "both parties are in agreement at the time they attempt to reduce their understanding to writing"; and (2) "the writing fails to express that understanding correctly." St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 88 N.J. 571, 579 (1982). To reform a contract, there must be "'clear and convincing proof' that the contract in its reformed, and not original, form is the one that the contracting parties understood and meant it to be." Id. at 581 (quoting Cen. State Bank v. Hudik-Ross Co., Inc., 164 N.J. Super. 317, 323 (App. Div. 1978)).

A review of the presented facts does not support a finding of mutual mistake. Harleysville did not make a mistake in issuing the insurance policies. The original insurance application was prepared by Walsdorf on behalf of Universal. The application called for Harleysville to provide commercial property coverage and commercial general liability coverage to Universal and requested that "Ed J Drennan" be included as an additional insured under the policy. Importantly, Drennan did not testify that he intended Rothschild to be included as an additional insured on the Harleysville policy.

11

Harleysville issued the policies as requested in the application, listing "Ed J Drennan" as the additional insured on the endorsement for "Additional Insured – Managers or Lessors of Premises." Moreover, Currier testified that Universal was only charged an additional $50 premium for the added coverage because, according to the application, "Mr. Drennan . . . owned the property that he was also insuring as the owner of Universal Carpet . . . ." Currier advised that "[h]ad it been a different business that owned the building other than Ed Drennan, it's a different exposure and I would have sought further information."

Therefore, Rothschild has not produced clear and convincing proof that any entity including Universal, Walsdorf, or Harleysville intended to include Rothschild as an additional insured under the policy. Therefore, there can be no finding of a mutual mistake.

We are also unpersuaded by Rothschild's assertion that Harleysville acted unconscionably and that such conduct, coupled with the unilateral mistake, requires reformation of the policy.

"The general rule with respect to the reformation of contracts applies equally to insurance policies: relief will be granted only where . . . a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party." N.J. Transit Corp. v. Certain Underwriters at Lloyd's

12

London, 461 N.J. Super. 440, 464 (App. Div. 2019) (internal quotation marks and citations omitted).

Rothschild grounds its argument in the 2013 certificate of insurance found in Heffner's file that listed Rothschild as an additional insured on Universal's policy. Rothschild asserts the document revealed that "Ed Drennan might not own the property and/or that Rothschild did." And that under agency law, Heffner's knowledge is imputed to its principal, Harleysville. Therefore, Harleysville should have investigated the true ownership of the warehouse.

As stated, Rothschild has not established that Harleysville either possessed the certificate of insurance or that it had knowledge of Rothschild's ownership of the building at any time from 2004 to the day the roof collapsed.

In addition, Harleysville had informed its agents, including Heffner, that the agencies did not have binding authority for any additional insured coverage. And Currier specifically advised Waldorf of this information at the time of the application process in 2004. Therefore, Heffner could not bind Harleysville to additional insured coverage on any basis.

In addition, an insurer's duty to investigate is limited. John Hancock Mut. Life Ins. Co. of Boston, Mass. v. Cronin, 139 N.J. Eq. 392, 398 (E. & A. 1947). The duty arises "'only when the independent investigation . . . discloses

A-1448-19

sufficient facts to seriously impair the value' of the application." Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 639 (1995) (alteration in original) (quoting Gallagher v. New Eng. Mut. Life Ins. Co. of Boston, 19 N.J. 14, 22 (1955)). On the other hand, an insured is responsible for the accuracy of its application and to truthfully respond to specific questions in the insurance application. Progressive Cas. Ins. Co. v. Hanna, 316 N.J. Super. 63, 70 (App. Div. 1998).

Here, Universal was obligated to ensure its application contained the correct information and to read the insurance policies issued by Harleysville to confirm that proper coverage was provided. The application requested Drennan be covered as an additional insured as the owner of the warehouse. Harleysville complied with the request and provided insurance coverage to Drennan as an additional insured. The insurance policies clearly identified Drennan as the additional insured. The same coverage was renewed year after year without objection by either Universal or Rothschild. Neither entity ever notified Harleysville of any error. Neither Universal nor Rothschild ever refused acceptance of the policy as written. See Martinez v. John Hancock Mut. Life Ins. Co, 145 N.J. Super. 301, 310 (App. Div. 1976) (holding that insured is "under a duty to examine [its] insurance policies" and if "the terms disclosed by

14

such an examination are inconsistent" with its desires, the insured is "required to notify the company of the inconsistency and of [its] refusal to accept the policy in the proffered condition.").

We are satisfied Harleysville did not act unconscionably in issuing the Universal insurance policy, as it had no knowledge of the mistake made by Universal's representative on the application. Nor was Harleysville ever informed by Universal or Rothschild during the many years of renewal that the policy was incorrect or unacceptable. Rothschild has not demonstrated a right to reformation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15                                          A-1448-19